LAW OFFICES OF MICHAEL J. GURFINKEL
Michael J. Gurfinkel, Esq. (SBN 93944)
Camille O. Bowman, Esq. (SBN 211458)
219 North Brand Boulevard
Glendale, CA 91203
Tel.: (818) 543-5800
Fax: (818) 543-5801
Email: lawoffice@gurfinkel.com

Attorneys for Petitioner

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYA C. CAMARA,<br><br>       Petitioner,<br><br>v.<br><br>MICHAEL CHERTOFF, Secretary of Department of Homeland Security; ALBERTO R. GONZALES, United States Attorney General; EMILIO T. GONZALEZ, Director of United States Citizenship and Immigration Services; and DAVID N. STILL, District Director of United States Citizenship and Immigration Services San Francisco District,<br><br>       Respondents.<br>_____ | Case No.:<br><br>Alien No.: A044-289-385<br><br>**PETITION FOR REVIEW OF A DENIAL OF PETITIONER'S NATURALIZATION APPLICATION BY THE UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES** |

# I.
# STATEMENT OF FACTS

1. Petitioner, Maya C. Camara, is a 33 year-old native and citizen of the Philippines.

2. On November 14, 1991, Ms. Camara married Anthony Dave Gonzales in a civil ceremony in Manila, Philippines. The marriage contract sets forth a marriage license No. 9935890. *See* **Exhibit A.**

3. However, a valid marriage license was never issued to Ms. Camara and Mr. Gonzales. Instead marriage license No. 9935890 was issued in favor of Rolando Sarenas and Cristina Francisco on November 6, 1991. *See* **Exhibit B.** Consequently, the purported marriage between Ms. Camara and Mr. Gonzales was performed without a valid marriage license, and was void *ab initio*.

4. Ms. Camara, subsequently obtained an immigrant visa, as the unmarried daughter of a United States citizen and was admitted to the United States at San Francisco, California on October 24, 1993. *See* **Exhibit C.**

5. On or about December 9, 1998, Ms. Camara filed her first naturalization application under Section 316(a) of the Immigration and Nationality Act (hereinafter "INA"). On January 22, 2001, the Immigration and Naturalization Service (currently known as the Department of Homeland Security or United States Citizenship and Immigration Services [hereinafter "USCIS"]) denied the

naturalization application finding that Ms. Camara was ineligible for naturalization because she was "married" at the time she immigrated to the United States. [1]

6.      On August 2, 2001, the Civil Registrar of Carmona, Cavite, Philippines issued a certificate, conclusively establishing that no marriage license was ever issued to Ms. Camara and Mr. Gonzales, but instead was issued to Rolando Sarenas and Cristina Francisco.

7.      On July 28, 2003, the Honorable Rosalina L. Luna Pison, Presiding Judge of the Regional Trial Court, National Capital Judicial Region, Branch 107, Quezon City, Republic of the Philippines, issued a judgment declaring the purported November 14, 1991 marriage between Ms. Camara and Mr. Gonzales "void *ab initio* for having been celebrated without a valid marriage license in accordance with par. 3 of Article 35 of the Family Code." Thereafter, on January 22, 2004, the same Court issued a Decree/Certificate of Finality regarding its July 28, 2003 decision. *See* **Exhibit D.** The judgment conclusively establishes, by a competent Court where the alleged marriage was celebrated, that the purported marriage was void *ab initio* and no valid marriage ever existed.

---

[1]     The Immigration and Naturalization Service ceased to exist as an independent agency and delegate of the Attorney General within the Department of Justice on March 1, 2003, when its functions, including naturalization, were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No. 107-296, 110 Stat. 2135 (Nov.25, 2002).

8. On November 13, 2003, Ms. Camara filed a second naturalization application, which is the subject of this petition for review. On October 20, 2005, the USCIS, once again denied the application, contending that despite her marriage being void *ab initio*, Ms. Camara was married at the time that she immigrated in the status as an unmarried daughter of a United States citizen. *See* **Exhibit E.** As such was ineligible for such status. Therefore, USCIS alleged Ms. Camara lacked the required five years of legal permanent residence in the United States. USCIS also denied the application alleging Ms. Camara gave false testimony concerning her marital status and therefore failed to demonstrate good moral character. In so doing, the USCIS ignored, disregarded, or refused to recognize a valid Court decree, declaring such marriage void *ab initio*.

9. On or about November 17, 2005, Ms. Camara filed a form N-336 requesting a hearing on the decision in naturalization proceedings. On December 19, 2005, a review hearing was conducted.

10. On August 23, 2006, the USCIS issued an N-336 hearing decision affirming the denial. *See* **Exhibit F.**

11. Ms. Camara is timely filing this petition for review in the United States District Court for the Northern District of California to review the erroneous N-336 hearing decision.

//

# II.
# JURISDICTION STATEMENT

**A.     Jurisdiction**

District Courts have jurisdiction pursuant to INA § 310(c), 8 U.S.C. § 1421(c) to review denials of applications for naturalization.

INA § 310(c), 8 U.S.C. § 1421(c) provides:

> *"(c) Judicial Review*
> *A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under Section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application."*

In the instant case, on December 19, 2005, Ms. Camara had a review hearing in Oakland, California on the denial of her application for naturalization. On or about August 23, 2006, USCIS District Director, David N. Still, for the San Francisco local office issued a hearing decision affirming the denial of the naturalization application. Because Ms. Camara resides in Daly City, San Mateo County, California, the United States District Court for the Northern District of California retains jurisdiction over the instant petition for review.

**B.    Intradistrict Assignment**

Pursuant to Civil L.R. 3-2(c), an action may be commenced within the meaning of FRCivP 3 at any office of the Clerk for this district. After the matter has been assigned to a Judge, unless ordered or permitted otherwise, all subsequent filings must be made in the Office of the Clerk at the division or location where the assigned Judge maintains chambers. Since Ms. Camara's hearing was in Oakland, and the decision was issued from the USCIS San Francisco office, it appears that assignment to either the San Francisco Division or Oakland Division would be proper.

### III.
### UNDER PHILIPPINE LAW, MS. CAMARA'S MARRIAGE WAS VOID *AB INITIO* SUCH THAT SHE LAWFULLY ENTERED THE UNITED STATES AS AN UNMARRIED DAUGHTER.

It is well established that the validity or invalidity of a marriage is determined by the law of the place of celebration. Matter of Gamero, I.&N. Dec. 674 (BIA 1974); Matter of Levine, 13 I.&N. Dec. 244 (BIA 1969); *Matter of Adamo*, 13 I.&N. Dec (BIA 1968); Matter *of P_*, 14 I.&N. Dec. 610 (BIA; A.G. 1952). Thus, the validity of Ms. Camara's 1991 marriage depends on whether, under Philippine law, a marriage is "valid" if celebrated without a marriage license.

//

With respect to void marriages under Philippine law, Article 35 of the Philippine Family Code provides in relevant part as follows:

> "Art. 35. <u>The following marriages shall be void from the beginning</u>:
>
> *(1) Those contracted by any party below eighteen years of age even with the consent of parents or guardians;*
> *(2) Those solemnized by any person not legally authorized to perform marriages unless such marriages were contracted with either or both parties believing in good faith that the solemnizing officer had the legal authority to do so;*
> ***(3) Those solemnized without license, except those covered by the preceding Chapter;***
> *(4) Those bigamous or polygamous marriages not failing under Article 41;*
> *(5) Those contracted through mistake of one contracting party as to the identity of the other; and*
> *(6) Those subsequent marriages that are void under Article 53."*
> [Emphasis added.]

Article 34, (the "preceding chapter") states that no license "shall be necessary for the marriage of a man and a woman who have lived together as husband and wife for at least five years and without any legal impediment to marry each other."

Here, Ms. Camara's marriage was void from the beginning pursuant to paragraph 3 of Article 35 because it was performed without a valid marriage license. Since Ms. Camara did not fulfill the requirements of Article 34, the exception to the ground for a void *ab initio* marriage under paragraph 3 of Article 35 does not apply.

Since it is the marital status at the time of entry that should serve as the basis for one alien's preferment over others under the quota system, <u>Hendrix v. INS</u>, 583 F.2d 1102, 1103, the issue in this case is whether Ms. Camara was "married" under Philippine law at the time of her entry into the United States. Under Philippine law, a marriage is void *ab initio* if performed without a marriage license. *Matter of Agustin*, 17 I.&N. Dec. 14 (BIA 1979). *See* <u>Mayo v. Schiltgen</u>, 921 F.2d 177, 180 (8th Cir. 1990) (remanding for determination as to validity of marriage where petitioner "submitted substantial authority supporting her argument that … the marriage is void under Philippine law"). When a marriage is void in the jurisdiction in which it was celebrated, it cannot be considered "valid" for immigration purposes. <u>Matter of Dela Cruz</u>, 14 I & N Dec. 686 (BIA 1974) (which concluded that a void marriage between first cousins under Philippine law could not be used for immigration purposes). Since Ms. Camara's 1991 marriage was void *ab initio* and had no legal effect from the very beginning, the proper characterization of her status was "single" when she entered the United States in 1993. Accordingly, Ms. Camara had a legal entry.

*//*

*//*

*//*

*//*

## IV.
## IT IS NOT NECESSARY TO "RELATE BACK" THE VOID *AB INITIO* DECISION OF THE PHILIPPINE COURT TO INVALIDATE MS. CAMARA'S 1991 MARRIAGE.

To prove the validity of Ms. Camara's admission as an unmarried daughter of a U.S. citizen, all that must be shown is that her 1991 marriage was not valid at the time she entered the U.S. Clearly, under Philippine law, as declared by a competent Philippine Court, Ms. Camara's 1991 marriage was never lawful, as it was void *ab initio*.

In the present case, the USCIS N-336 Hearing Decision (bottom of page 2 – top of page 3) points to <u>Matter of Agustin</u>, 17 I.&N. Dec. 14 (BIA 1979) with the following:

> *"In Matter of Agustin 17 I.&N. Dec. 14 (BIA 1979), plaintiff argued that her Philippine marriage was not valid because she did not freely consent, a valid marriage license was not issued, and the marriage was not properly solomized. The BIA, however, determined that the marriage defects referred to did not appear to be fatal to the validity of the marriage. Id. at 15."*

The analysis of USCIS is misplaced. The Court in <u>Matter of Agustin</u>, found that the defects in the marriage referred to by the respondent in that case did not appear to be fatal to the validity of the marriage because that respondent failed to cite authority clearly establishing the marriage would be void *ab initio* under Philippine law. <u>Id.</u>

The Court further went on to say:

> *"The respondent has not introduced any evidence, other than her own testimony, to support her claim that no marriage license was, in fact, issued. Accordingly, we find that the evidence does not support a finding that her marriage to Francisco Ignacio was invalid under Philippine law because of the lack of proper solemnization or a marriage license."*
> Id. at 16.

Ms. Camara's case is quite different from the respondent's in Matter of Agustin because Ms. Camara presented substantial and persuasive (if not conclusive) evidence showing she did not have a valid marriage license. On August 2, 2001, the Civil Registrar of Carmona, Cavite, Philippines issued a certificate establishing no marriage license was issued to Ms. Camara and Mr. Gonzales, but instead the referenced marriage license was issued to Rolando Sarenas and Cristina Francisco. Furthermore, on July 28, 2003, the Regional Trial Court in the Philippines issued a judgment declaring the 1991 marriage between Ms. Camara and Mr. Gonzales "void *ab initio* for having been celebrated without a valid marriage license in accordance with par.3 of Article 35 of the Family Code." Because Ms. Camara provided overwhelming evidence and proof that she lacked the required marriage license, she established that her marriage in the Philippines was void in accordance with the rationale in Matter of Agustin.

USCIS further misapplies Matter of Agustin with the following:

> *"The BIA also determined that whether the marriage ceremony was voidable is immaterial since a voidable marriage is regarded as valid until annulled or otherwise terminated. Id. at 16. Using the same reasoning, even if the marriage was found to be void ab initio, it would be void from the date that the Regional Trial Court issued the order nullifying the marriage. Hence, you were a married daughter at the time of entry into the U.S. in 1993 as the decree was not issued until 2003."*
> USCIS N-336 decision (bottom of page 2 – top of page 3).

The reasoning of USCIS is misplaced. There is a significant difference between "void" and "voidable." Ms. Camara's marriage was "void," not "voidable." Even if there never had been an annulment of Ms. Camara's purported 1991 "marriage," such marriage would still have never legally occurred, as the annulment merely declared the existing fact that the marriage was invalid or void from the beginning. See Estate of Gregorson, 160 Cal. 21, 26 (1911). [2] In this case Ms. Camara's marriage was void from its inception, not from the date that the

---

[2]   California law makes a distinction between void and voidable marriages. Estate of Gregorson, 160 Cal. 21, 25 (1911). A "void" marriage is a marriage that is invalid from the beginning, while a "voidable" marriage is one which is capable of being annulled. Id. at 24-25. With respect to a void marriage, the marriage was never valid at any time, and an annulment is a mere formality that "merely declares an existing fact–viz., that the marriage is void–and this fact may be shown even though it may not have been so adjudicated." Id. at 26. An annulment is not "the exclusive method of questioning the validity of the purported marriage." Id. Only when a marriage is voidable is an annulment required to make the marriage invalid. Id. In addition, California law provides that if a marriage is void in the jurisdiction (other than California) where it was performed, it is void in California. Estate of Levie, 50 Cal.App.3d 572, 576 (1975).

Regional Trial Court issued the order nullifying the marriage, as USCIS incorrectly contends.

Assuming, *arguendo*, that the annulment of Ms. Camara's 1991 marriage would need to be "related back" to the 1991 marriage to validate Ms. Camara's unmarried status, the "relation back" doctrine still can be applied to the annulment. The "relation back" doctrine is a legal fiction created to ensure "substantial justice." Matter of Magana, 17 I.&N. Dec. 111 (BIA 1979). The "relation back" doctrine will not be applied if doing so would result in a gross miscarriage of justice. Matter of Castillo-Sedano, 15 I.&N. Dec. 445 (BIA 1975). Where the government determines that a person received immigration benefits by concealing a disqualifying marriage, it will not allow that person to benefit from the application of the "relation back" doctrine. Matter of Magana, supra. In Matter of Magana, the Court found that the respondent did not truthfully testify with respect to why he believed he was not previously married. Due to the misrepresentations, the Court felt that justice "would be better served by not relating the Washington decree back for immigration purposes." Furthermore, the Court in Matter of Astorga, 17 I.&N. Dec. 1 (BIA 1979), found that nearly all cases which declined to apply the relation back doctrine involved facts where "either fraud, misrepresentation or manipulation of the immigration laws was a consideration . . . ." Id.

In the instant case, Ms. Camara's 1991 marriage was void, based upon Article 35 of the Philippines Family Code. As such, Ms. Camara clearly was not married at the time she entered as an unmarried child of a U.S. citizen. Given that Ms. Camara did not commit fraud or make a misrepresentation when she made her 1993 entry, the annulment should be related back to the time of her 1991 marriage in order to achieve a just result. Simply put, the relation back doctrine cannot and should not be used or manipulated by USCIS to effectively declare as "valid" a marriage that was void *ab initio*. Such a proposition would nullify applicable laws and a valid Court decree.

### V.
### IT WAS IMPROPER TO FIND THAT MS. CAMARA LACKED GOOD MORAL.

The USCIS improperly determined that Ms. Camara "lied to obtain an immigration benefit [she] was not entitled to and would not have obtained had [she] spoken the truth about [her] marital status." (USCIS N-336 Hearing Decision at page 3). The USCIS is alleging that Ms. Camara made a misrepresentation at the time of her entry. However, in Matter of S- and B-C-, 9 I.&N. Dec. 436, 448-449 (A.G. 1961), the Attorney General defined the elements of a material misrepresentation as:

> *"A misrepresentation made in connection with an application for visa or other documents, or with entry into the United States, is material if either:*

> *(1) the alien is excludable on the <u>true facts</u>, or*
> *(2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might as well result in a proper determination that he be excluded."*

[Emphasis added.]

In the case at bar, the "true facts" are that Ms. Camara was not lawfully married, therefore was not excludable, and consequently made a lawful entry. In essence, if the "true facts" were that Ms. Camara was not legally married, she did not misrepresent her marital status. Under Philippine law, as confirmed by a competent Court, Ms. Camara was not legally or validly married. In all respects, Ms. Camara is a person of good moral character and an excellent candidate for naturalization.

## VI.
## REQUESTED RELIEF

Ms. Camara respectfully requests this Court to order the Attorney General to grant Petitioner's application for naturalization, or in the alternative to conduct a hearing de novo on the naturalization application.

*//*

*//*

*//*

*//*

*//*

# VII.
# CONCLUSION

Based on the foregoing reasons, Ms. Camara respectfully requests that the petition for review be granted.

Respectfully submitted,

DATED:  December 8, 2006                    _____/S/_____
Camille O. Bowman, Esq.
Law Offices of Michael J. Gurfinkel
219 North Brand Boulevard
Glendale, CA 91203-2609