Civil Case No. Q 02 – 46284
DECISION
Page 2

CERTIFIED TRUE COPY:

MARIA ZORAIDA S. ZABAT TUAZON
Branch Clerk of Court
RTC, Br. 107, Q.C. 1-28-0?

ACP Evelyn Pascua Lee submitted her Collusion Report on October 4, 2002 recommending that the case be tried on the merits.

At the scheduled pre-trial conference on October 29, 2002, the petitioner and his counsel, Atty. Renato Cunanan appeared. ACP Elizabeth Pagdilao appeared as counsel for the State. There was no appearance from the respondents. The parties identified the issue as: Whether or not the petitioner is entitled to the relief prayed for. The petitioner marked in advance his documentary evidence. ACP Pagdilao manifested that she had not conferred with the respondents as of that moment and had nothing to propose or comment on the evidence to be presented. The pre-trial was therefore declared closed and terminated and set for the reception of petitioner's evidence.

The petitioner presented himself as his lone witness to substantiate the allegations in his petition. He filed his Memorandum.

### PETITIONER'S EVIDENCE

Petitioner met the respondent, Maya C. Camara Gonzales, hereinafter referred to as Maya, sometime in 1986. They became steadies and got married on November 14, 1991 at the City Hall of Manila (Exhibit "A"). Respondent's family secured all the documents needed and took care of the arrangements for the wedding. Their marriage was

Civil Case No. Q 02 – 46284
DECISION
Page 3

CERTIFIED TRUE COPY:

ZORAIDA S. ZABAT TUAZON
Branch Clerk of Court
RTC, Br. 107, Q.C.

blessed with a son, Laurenz Anthony Camara Gonzales who was born on May 10, 1992 (Exhibit "D").

In 1993, the respondent, Maya, left for the United States of America (US). She came back to the country in 1995 and since then had come back and forth to the US in 1997 and 1998. Their son is with respondent.

While in the US, the respondent, Maya, called petitioner in 2000 and informed him that their marriage is void for lack of marriage license and that she would give him the documents. Petitioner did not know how to react. He did not confront her over the phone but cried. He was then hoping that with the 8 years that respondent was away, they would already be together. But the respondent, Maya, advised him to file this case. So, he consulted his mother and filed this case. They made verifications on the marriage license issued to them for their wedding.

Mr. Michael Gurfinkel who referred the case to petitioner's lawyer secured a Certification dated August 2, 2001 from Ms. Leodivinia C. Encarnacion, Civil Registrar of Carmona, Cavite. They discovered that Marriage License No. 9935890 purportedly issued to them for their wedding was issued in favor of Mr. Rolando Sarenas and Miss Cristina Francisco on November 6, 1991 and that no marriage license was issued to Mr. Anthony Dave T. Gonzales and Miss Maya Camara on November 8, 1991 (Exhibit "B"). The certified true copy of the Logbook of Marriage License of the Municipal Civil Registrar of Carmona, Cavite also

Civil Case No. Q-02 – 46284
DECISION
Page 4

CERTIFIED TRUE COPY:

MARIA ZORAIDA S. ZABAT TUAZON
Branch Clerk of Court
RTC, Br. 107, Q.C./-28-0*

showed that the entry No. 2040 dated November 6, 1991 to the effect that the said marriage license was indeed issued in favor of Rolando Sarenas and Cristina Francisco (Exhibit "C").

### RESPONDENTS' EVIDENCE

All the respondents were duly summoned but they failed to file their responsive pleadings. The respondent, Maya C. Camara Gonzales did not also appear despite notice.

### THE POSITION OF THE STATE

The Office of the Solicitor General entered its appearance on March 25, 2003 authorizing the Office of the City Prosecutor to appear in this case. Assistant City Prosecutor Elizabeth Pagdilao manifested that the State had nothing to present to rebut the petitioner's evidence.

### THE ISSUE:

Is the petitioner entitled to the relief prayed for?

### DISCUSSION/EVALUATION

Article 3 of the Family Code provides:

*The formal requisites of marriage are:*

(1)   x   x   x

(2)   A valid marriage license except in the cases provided for in Chapter 2 of this Title; and

(3)   x   x   x

CERTIFIED TRUE COPY:

MARIA ZORAIDA S. ZABAT TUAZON
Branch Clerk of Court
RTC, Br. 107, Q.C.

Civil Case No. Q 02 – 46284
DECISION
Page 5

Article 4 of the same Code further provides:

"*The absence of any of the essential or formal requisites shall render the marriage void ab initio except as stated in Article 35 (2).*"

Evaluating the evidence presented, this Court finds that the petitioner sufficiently established that Marriage License No. 9935890 purportedly issued to him and the respondent on November 8, 1991 which was used as a basis for their wedding on November 14, 1991 at the City Hall of Manila, was in fact issued to Mr. Rolando Sarenas and Miss Cristina Francisco on November 6, 1991. A valid marriage license is a requisite of marriage and the absence thereof, subject to certain exceptions, renders the marriage void ab initio (Cariño vs. Cariño, 351 SCRA 127). This being so, their marriage which was celebrated on November 14, 1991 in Manila was celebrated without a valid marriage license and therefore void ab initio.

WHEREFORE, IN VIEW OF THE FOREGOING, judgment is hereby rendered, to wit:

1. Declaring the marriage celebrated between the petitioner, ANTHONY DAVE GONZALES (GONZALEZ) and respondent, MAYA C. CAMARA on November 14, 1991 in Manila void ab initio under Articles 3 and 4 of the Family Code. Henceforth, they shall be governed by the complete separation of property. There being no properties to speak of, no pronouncement is hereby made thereon.

Civil Case No. Q 02 – 46284
DECISION
Page 6

CERTIFIED TRUE COPY:

MARIA ZORAIDA S/ZABAT TUAZON
Branch Clerk of Court
MeTC, Br. 107, Q.C. /-28-04

2. Their child, Laurenz Anthony Camara Gonzales is hereby declared an illegitimate child. He shall remain in the custody of the respondent. He is entitled to receive support from the parties. There being no evidence on his support requirements and the ability of the respondent to give support, no pronouncement is hereby made thereon in the meantime.

3. Henceforth, the respondent shall be known by her maiden name, CAMARA.

Let a copy of this Decision be furnished the Local Civil Registrar of Manila where the marriage was celebrated and the Local Civil Registrar of Kalookan City so that the necessary correction shall be made on the birth certificate of Laurenz Anthony Gonzales upon the finality of this Decision.

The parties are hereby ordered to verify the service of this Decision to the parties concerned for the issuance of certificate of finality.

SO ORDERED.

July 28, 2003, Quezon City, Metro Manila.

ROSALINA L. LUNA PISON
Presiding Judge

RLLP/mzzt/mls
Cc:
OCAD           LCR              LCR         NSO
SC, Manila     Carmona, Cavite  Manila      OSG

ACP Elizabeth Pagdilao  Atty. Renato Cunanan  Maya Camara

**EXHIBIT E**



Direct all responses by mail to the office listed below:
IMMIGRATION AND NATURALIZATION SERVICE
630 Sansome St # 2ND Fl    Reception
San Francisco CA  94111

**U.S. Department of Justice**
*Immigration and Naturalization Service*

---

Maya Canete Camara
294 Avalon Drive
Daly City CA  94015

Refer to this file: WSC*001048821
Alien Number:   A 044 289 385
Date:
          OCT  2 0  2005

# DECISION

On December 20, 2004, you appeared for an examination of your application for naturalization, which was filed in accordance with Section 316(a) of the Immigration and Nationality Act.

Pursuant to the investigation and examination of your application it is determined that you are ineligible for naturalization for the following reason(s):

### See Attachment(s)

If you desire to request a review hearing on this decision pursuant to Section 336(a) of the Act, **you must file a request for a hearing within 30 Days of the date of this notice.** If no request for hearing is filed within the time allowed, this decision is final. A request for hearing may be made to the District Director, with the Immigration and Naturalization office which made the decision, on Form N-336, **Request for Hearing on a Decision in Naturalization Proceedings under Section 336 of the Act, together with a fee of $250**. A brief or other written statement in support of your request may be submitted with the Request for Hearing.

Sincerely,

David N Still
District Director

Cc: Attorney, Michael J. Gurfinkel

Form N-335

Attachment(s) to Form N-335

Applicant: Maya Canete Camara
Application for Naturalization, Form N-400
Alien Number: A044289385
Application ID: WSC*001048821
Page 1 of 3

Your application is hereby denied in accordance with the Title 8 Code of Federal Regulations Section(s) listed below:

On November 13, 2003, you filed an application under Section 316(a) of the Immigration and Nationality Act, as amended, herein the Act. On December 20, 2004, an officer of the Immigration and Naturalization Service interviewed you to determine your eligibility for naturalization. During that interview you testified that you had legally married only one time in your life to your spouse, Anthony Dave Tobias Gonzales, on April 19, 1995. To confirm this testimony, an affidavit of sworn testimony was taken, wherein you swore that you had never been married prior to October of 1993, that you were single when you immigrated to the United States, and that your child was born illegitimate. In your affidavit of sworn statement you further stated that you were married to your current spouse in 1991, "but was not a legally valid marriage. It was a marriage without marriage license."

A review of your immigrant record revealed that you subsequently immigrated to the United States on October 24, 1993, as an unmarried daughter of a United States citizen.

In an attempt to verify your testimony, an overseas investigation was conducted. Results revealed that you had, in fact, married Anthony Gonzales on November 14, 1991 in the Philippines. Had you divulged your marital status at the time of your September 28, 1993 immigrant visa interview, your immigrant application would have been denied and the approval of your petition revoked. It is noted that you signed a Statement of Marriageable Age Applicant at the time of your visa interview, representing that you had never been married and acknowledging that you would be rendered ineligible for immigration should you marry before immigrating to the United States. In addition, had you revealed that you were married at the time of entry into the United States on October 24, 1993 you would have been denied lawful entry into the United States, as you were excludable.

The Service acknowledges that you have submitted a decree/certificate of finality showing that you obtained a court order from Regional Trial Court in the Philippines, altering the marriage date from November 14, 1991 to October 24, 1993. The Service cannot recognize this nunc pro tunc action. The fact remains that you were legally married to Anthony Gonzales at the time you immigrated and you misrepresented that fact to this Service.

It is well-established law that the validity to a marriage is determined by the law of the place of celebration, in the Philippines. Matter of Gamero, 14 I. & N. Dec. 674 (BIA 1974).

Pursuant to Article 2 of the Philippine Family Code, no marriage shall be valid, unless these essential requisites are present:
1. Legal capacity of the contracting parties who must be a male and a female; and
2. Consent freely given in the presence of the solemnizing officer.

In addition, under Article 3 of the Philippine Family Law, the formal requisites of marriage are:
1. Authority of the solemnizing officer;
2. A valid marriage license except in the cases provided for in Chapter 2 of this Title;
3. A marriage ceremony which takes place with the appearance of the contracting parties before the solemnizing officer and their personal declaration that they take each other as husband and wife in the presence of not less than two witnesses of legal age.

The absence of any of the essential or formal requisites shall render the marriage void ab initio, except as stated in Article 35 (2). See Article 4 of the Philippine Family Code.

Applicant: Maya Canete Camara
Application for Naturalization, Form N-400
Alien Number: A044289385
Application ID: WSC*001048821
Page 2 of 3

During your examination on December 20, 2004, you presented a certificate from the Regional Trial Court, Republic of Philippines, there is nothing in the court's decision or in the Service's record of proceeding to suggest that you or your husband lacked the intent or the capacity to marry. Furthermore, you were married in a civil ceremony before a minister, who is an authorized solemnizing officer pursuant to Article 92. To the contrary, it is clear in the decision of the Philippine court that the marriage was a blessed marriage by family members and later gave birth to your child from this marriage. The decision even goes as far to state that your husband did not want to complete this void ab initio process and was devastated in discovering that the marriage license was improperly registered. In fact, you received notice regarding the action and you failed to appear or submit any evidence in the case. Therefore, the Regional Trial Court did not have any knowledge as to the truth or falsity of the evidence being submitted.

Philippines Family Code stated "that an improperly registered marriage license gives the parties the right to void ab initio or annul an otherwise valid marriage". In the case of Matter of Agustin, 17 I. & N Dec. 14 (BIA 1979). Even if the marriage is found to be void ab initio, it would only deemed to be void from the date that the Regional Trial Court issued the order nullifying the marriage. As such, you wold have been a married daughter to a United States Citizen at the time your entry into the United States in 1993 as the decree was not issued until 2003.

It is well settled law that an annulment or nullity of a marriage being sought to cure an illegal entry based on the fact that the applicant's immigration status at the time of entry depended upon being unmarried in not recognized for immigration purposes. Matter of Wong, 16 I. & N. Dec. 87 (BIA 1977); see also Hendrix v. INS, 583 F.2d 1102 (9th Cir. 1978). Regardless of what effect the courts might give to a decree of annulmen, for immigration purposes, the Services is not obliged to give retroactive effect to it so as to cure a violation of law respecting entry into the United States. It is the marital status at the time of entry that should serve as the basis for one alien's preferment over others under the quota system. Hendrix v. INS, 583F.2d at 1103. When you applied for your immigrant visa, you did not indicate to former INS officials that you were married or that you had a child. You signed a statement of marriable age prior to your entry into the United States.

Section 316 of the Act provides in pertinent part that no person shall be naturalized unless immediately preceding the date of filing of his application for naturalization he has resided continuously in the United States for at least five years, after being lawfully admitted for permanent residence.

It is well settled that an alien who is excludable at entry does not acquire a lawful status. In Re Longstaff, 716 F.2d 1439 (5th cir. 1983) the court decided that an "admission is not lawful if it is regular only in form. The term *lawfully* denotes compliance with substantive legal requirements, no merely procedural regularity..." In the case of Monet v. INS, 791 F.2d 752 (9th cir. 1986); and the case of Matter of T, 6 I&N Dec. 136 (A.G. 1934), the court held that the alien's entry was not lawful because he obtained an immigration visa by fraud. In the case of Fedorenko v. United States, 449 U.S. 490 (1981), the court held that because an alien was not lawfully admitted to the United States, the applicant was ineligible for naturalization.

At the time you immigrated to the United States as an unmarried daughter of a United States citizen, you were ineligible for such status, as you were in fact married. Inasmuch as you were not lawfully admitted to the United States as a lawful permanent resident, you do not at this time meet the five years continuous residence requirement, and you are ineligible for naturalization.

In addition, during your interview before an officer of the Immigration and Naturalization Service, on November 16, 1999, you provided false testimony when you claimed that you were married one time. Section 316(a) of the Act states that "no person...shall be naturalized unless such applicant during the five years immediately preceding the date of filing his application...has been and still is a person of good moral character..."

Applicant: Maya Canete Camara
Application for Naturalization, Form N-400
Alien Number: A044289385
Application ID: WSC*001048821
Page 3 of 3

Title 8, Code of Federal Regulations, part 316.10(b)(2) delineates what does not meet the good moral character requirement, stating that "an applicant shall be found to lack good moral character if during the statutory period the applicant...(vi) Has given false testimony to obtain any benefit from the Act, it the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit..."

The Service finds that your false testimony, regarding your martial history, fails to demonstrate good moral character, as is required.

**In conclusion, you are ineligible for naturalization in that you have failed to establish that you are a person of good moral character and that you have the requisite continuous lawful permanent residence status in the United States. Therefore, your application must be and hereby is denied.**

**EXHIBIT F**

U.S. Department of Homeland Security
650 Sansome Street, Citizenship Branch
San Francisco, CA 94111



**U.S. Citizenship
and Immigration
Services**

Maya Camara
294 Avalon Drive
Daly City CA 94015

Refer to File Number:
A 44 289 385/N-336

## N-336 HEARING DECISION

On October 20, 2005, your application for naturalization was denied, and you filed timely a Form N-336, Request for Hearing on a Decision [in] Naturalization Proceedings. On December 19, 2005, a Review Hearing was conducted to allow you an opportunity to overcome the reasons for the denial of your application for naturalization.

Your application for naturalization, which was filed under Section 316(a) of the Immigration and Nationality Act (INA), was denied because you immigrated as an unmarried daughter of a United States citizen and were ineligible for such status as you were married, and, therefore, lacked the required five years legal permanent residence in the United States. Your application was also denied because it was determined that you gave false testimony concerning your marital status and therefore failed to demonstrate good moral character.

In your appeal to the decision, you provided the following rebuttal. Your marriage lacked a marriage license and therefore was void *ab initio* under paragraph 3 of Article 35 of the Family Code of the Philippines. You provided a decision of the Regional Trial Court, National Capital Judicial Region, Branch 107, Quezon City, Republic of the Philippines, dated July 28, 2003, and a decree/certificate of finality from the same court dated January 22, 2004, stating that the said marriage was declared void *ab initio* and that your child, Laurenz Anthony Camara Gonzales, was declared illegitimate. You maintained that the marriage was void and invalid, that is, that it was void from its inception rather than being a voidable marriage. Hence, your argument proceeded, because the marriage was declared void *ab initio* in the Philippines, the jurisdiction in which it was celebrated, the marriage cannot be valid for immigration purposes. Further, you contended that your misrepresentation was not material because you were not legally married and therefore not excludable.

The Service has reviewed the facts presented. It has determined that you have not sufficiently overcome in whole or in part the reasons for the denial of your application for naturalization, and your application remains denied.

Specifically, the Service considered the following information in making its determination. It is well established that the validity of a marriage is determined by the law of the place of celebration, in this case, the Philippines. Matter of Gamero, 14 I&N Dec. 674 (BIA 1974). Pursuant to Article 2 of the Family Code of the Philippines (Executive Order 209 dated July 6, 1987), no marriage shall be valid, unless these essential requisites are present:

1. Legal capacity of the contracting parties who must be a male and a female;
2. Consent freely given in the presence of the solemnizing officer.

Further, Article 3 of the Family Code of the Philippines states: "The formal requisites of marriage are:

1. Authority of the solemnizing officer
2. A valid marriage license except in the cases provided for in Chapter 2 of this Title;
3. A marriage ceremony which takes place with the appearance of the contracting parties before the solemnizing officer and their personal declaration that they take each other as husband and wife in the presence of not less than two witnesses of legal age."

Furthermore, Article 4 of the Family Code of the Philippines states: "The absence of any of the essential or formal requisites shall render the marriage void *ab initio* except as stated in Article 35 (2). A defect in any of the essential requisites shall not affect the validity of the marriage, but the party or parties responsible for the irregularity shall be civilly, criminally and administratively liable."

Although you presented a decision and a decree/certificate of finality from the Regional Trial Court, Republic of the Philippines, declaring your marriage void *ab initio*, there is no evidence in the court's decision or in USCIS' record of proceedings to suggest that you or your husband lacked the intent or the capacity to marry. You married in a civil ceremony before a minister who was an authorized solemnizing officer pursuant to Article 7 of the Family Code of the Philippines on November 17, 1991 at the City Hall of Manila. Your parents and your husband's parents gave their consent to the marriage. In the marriage contract, the minister, Rev. Jullie Torres, certified knowing full well that he was civilly, criminally and administratively liable pursuant to Article 4 of the Family Code of the Philippines "that the Marriage License Number 9935890 issued at Carmona, Cavita, Philippines, on November 8, 1991, in favor of said parties (that is, you and your husband) was exhibited to me..." Your family secured all the documents needed and made the arrangements for the wedding. You stated to the Service that your son was born prior to the marriage ceremony on May 10, 1991 and provided a birth certificate verifying that birthdate. However, the court was informed that your son was born on May 10, 1992, subsequent to the marriage ceremony. Thus, the decision stated that your marriage was blessed with a son born May 10, 1992. The Court noted that your husband cried when informed that the marriage license was improperly registered. You advised your husband to initiate proceedings to void your marriage. Your attorney, Mr. Michael Gurfinkel, secured a certification from the Civil Registrar of Carmona, Cavite, Philippines, dated August 2, 2001 that no marriage license was issued to you and your husband but instead was issued in favor of Rolando Sarenas and Cristina Francisco. You and your husband were summoned by the court; both of you failed to file your responsive pleadings. And although you were notified of the proceedings, you failed to appear. Therefore, the Regional Trial Court did not have any knowledge as to the veracity of the evidence being submitted. Because the State had nothing to present to rebut your husband's evidence, the court declared the marriage void *ab initio* and declared your child illegitimate on July 28, 2003. Moreover, the Service noted that you initiated steps to have the marriage declared void *ab initio* only after a previous application for naturalization was denied. That application was also denied because you were married and entered the United States as a child of a U.S. citizen and thus, were ineligible for the visa.

And lastly, while you contended that the license was issued to another couple and therefore, was invalid, it is noted that the Family Code of the Philippines is silent in stating that an improperly registered marriage license gives the parties the right to void *ab initio* or annul an otherwise valid marriage. Article 4 of the Family Code of the Philippines states in pertinent part: "A defect in any of the essential requisites shall not affect the validity of the marriage..."

In Matter of Agustin 17 I &N Dec. 14 (BIA 1979), plaintiff argued that her Philippine marriage was not valid because she did not freely consent, a valid marriage license was not issued, and the marriage was not properly solemnized. The BIA, however, determined that the marriage defects referred to did not appear to be fatal to the validity of the marriage. Id at 15. The BIA also determined that whether the marriage ceremony was voidable is immaterial since a voidable marriage is regarded as valid until annulled or otherwise terminated. Id. At 16. Using the same reasoning, even if the marriage was found to be void *ab initio*, it would only deemed to be void from the date that the Regional Trial Court issued the

order nullifying the marriage. Hence, you were a married daughter at the time of entry into the U.S. in 1993 as the decree was not issued until 2003.

Marriages declared void at inception or annulled will not relate back to cure a ground of exclusion...at the time of entry where the alien entered the United States in an immigrant status dependent on his being unmarried. Matter of Astorga 17 I&N Dec. 1 (BIA 1979); Matter of Wong, 16 I&N Dec. 87 (BIA 1977); Matter of R__J__, 7 I&N Dec. 182 (BIA 1956), reaffirmed. See also Hendrix v. INS, 583 F.2d 1102 (9th Cir. 1978). Regardless of the effect of the courts concerning a decree of annulment, for immigration purposes, USCIS is not obliged to give retroactive effect to it so as to cure a violation of law respecting entry into the United States. It is the marital status at the time of entry that should serve as the basis for one alien's preferment over others under the quota system. Hendrix V. INS, 583 F.2e at 1103. When you applied for your immigrant visa, you did not indicate to legacy INS officials that you were married or that you had a child from your marriage. You signed a statement of marriageable age applicant, Form OF-237, prior to your entry into the U.S. You misrepresented both your marital status and that you had a child from the marriage. You continued to misrepresent both during your second application for naturalization (filed December 9, 1998) which was denied. Finally, it was only after the Service denied that naturalization application that you advised your husband to go to the Philippines Regional Trial Court on the counsel of your attorney to secure a nullity of marriage. The evidence described above supports the Service's determination that you lied to obtain an immigration benefit you were not entitled to and would not have obtained had you spoken the truth about your marital status.

Section 336.9(b) of Title 8, Code of Federal Regulations provides for a further review of your qualifications for naturalization under your current application. To request such a review, you must file a petition for review with the United States District Court having jurisdiction of your place of residence, in accordance with Chapter 7, Title 5, United States Code, within not more than 120 days of the date of this decision.

*[signature]*

David N. Still
District Director

cc: Michael Gurfinkel

