1  LAW OFFICES OF MICHAEL J. GURFINKEL
   Michael J. Gurfinkel, Esq. (SBN 93944)
2  Camille O. Bowman, Esq. (SBN 211458)
   219 North Brand Boulevard
3  Glendale, CA 91203
   Tel.: (818) 543-5800
4  Fax: (818) 543-5801
   Email: michael@gurfinkel.com
5
   Attorneys for Petitioner
6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 MAYA C. CAMARA,                          ) Case No.: C 06-7552 EMC
                                            )
12         Petitioner,                      ) Alien No.: A044-289-385
                                            )
13         v.                               )
                                            )
14 MICHAEL CHERTOFF, Secretary of           ) **PETITIONER'S MEMORANDUM
   Department of Homeland Security;         ) OF POINTS AND AUTHORITIES
15 ALBERTO R. GONZALES, United              ) IN SUPPORT OF MOTION FOR
   States Attorney General; EMILIO T.       ) SUMMARY JUDGMENT; AND
16 GONZALEZ, Director of United States      ) DECLARATION OF MICHAEL J.
   Citizenship and Immigration Services;    ) GURFINKEL WITH ATTACHED
17 and DAVID N. STILL, District             ) EXHIBITS.**
   Director of United States Citizenship    )
18 and Immigration Services San             ) Hearing Date: December 12, 2007
   Francisco District,                      )
19                                          ) Time:         3:00 p.m.
           Respondents.                     )
20 _____  ) Courtroom:    C, 15th Floor

21

22

23

24

25

26

27

28

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

- 1 -

# I.
# INTRODUCTION

Petitioner, by and through the undersigned counsel, hereby moves for summary judgment in her favor. The basic issue in this case is whether Respondents can unilaterally declare that a <u>void *ab initio*</u> marriage is nevertheless <u>valid</u> for "immigration purposes." It is Petitioner's position that a marriage that is void *ab initio* (based on applicable statutes, case law, and court decrees) cannot be valid at any time, or for any purpose. Respondents simply do not have the power, authority, and/or jurisdiction to validate or recognize void *ab initio* marriages.

In this Memorandum, Petitioner will show that the United States Citizenship and Immigration Services (hereinafter "USCIS") erred in finding Petitioner's marriage "valid" at the time that she immigrated (in the status as an unmarried daughter of a United States citizen) because her 1991 marriage was declared invalid  (or void *ab initio*) under Philippine law, by a competent Court having jurisdiction over the case.  Therefore, it follows that the USCIS erred in finding Petitioner ineligible for naturalization based on her being "married." As there are no material facts in dispute, Petitioner submits that she is entitled to judgment as a matter of law pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.

//

//

## II.
## STATEMENT OF ISSUES

1) Whether a marriage that is declared void *ab initio* in the Philippines can nevertheless be valid for immigration purposes.

**2)** Whether the USCIS erred in determining Petitioner lacked good moral character with her testimony regarding her marital status, based on the fact that her 1991 marriage was void under Philippine law.

## III.
## STATEMENT OF FACTS

Petitioner, Maya C. Camara, is a 33 year-old native and citizen of the Philippines.

On November 14, 1991, Ms. Camara purportedly "married" Anthony Dave Gonzalez in a civil ceremony in Manila, Philippines. The marriage contract sets forth a marriage license No. 9935890. *See* **Exhibit A.** [1] However, a valid marriage license was never issued to Ms. Camara and Mr. Gonzalez. Instead marriage license No. 9935890 was issued in favor of another couple, Rolando Sarenas and Cristina Francisco on November 6, 1991. *See* **Exhibit B.** Consequently, the purported marriage between Ms. Camara and Mr. Gonzalez was performed without a valid marriage license.

---

[1] Exhibits A through G are introduced through the attached declaration of Michael J. Gurfinkel.

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

- 3 -

Pursuant to the Article 35(3) of the Philippine Family Code, a marriage performed without a marriage license is "void from the beginning" or void *ab initio*.

Ms. Camara, subsequently obtained an immigrant visa, as the unmarried daughter of a United States citizen, and was admitted to the United States at San Francisco, California on October 24, 1993. *See* **Exhibit C.**

On or about December 9, 1998, Ms. Camara filed her first naturalization application under 8 U.S.C. § 1427(a), Section 316(a) of the Immigration and Nationality Act (hereinafter "INA"). On January 22, 2001, the Immigration and Naturalization Service (currently known as the Department of Homeland Security or USCIS) denied her naturalization application, finding that Ms. Camara was ineligible for naturalization because she was "married" at the time she immigrated to the United States. [2]

On August 2, 2001, the Civil Registrar of Carmona, Cavite, Philippines issued a certificate, <u>conclusively establishing that no marriage license was ever issued to Ms. Camara and Mr. Gonzalez</u>, but instead the marriage license referred

---

[2] The Immigration and Naturalization Service ceased to exist as an independent agency and delegate of the Attorney General within the Department of Justice on March 1, 2003, when its functions, including naturalization, were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No. 107-296, 110 Stat. 2135 (Nov.25, 2002).

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
 MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

to in their marriage contract was actually issued to Rolando Sarenas and Cristina Francisco. *See* **Exhibit B.**

On July 28, 2003, the Honorable Rosalina L. Luna Pison, Presiding Judge of the Regional Trial Court, National Capital Judicial Region, Branch 107, Quezon City, Republic of the Philippines, issued a judgment, formally declaring the purported November 14, 1991 marriage between Ms. Camara and Mr. Gonzalez "void *ab initio* for having been celebrated without a valid marriage license in accordance with par. 3 of Article 35 of the Family Code." Thereafter, on January 22, 2004, the same Court issued a Decree/Certificate of Finality regarding its July 28, 2003 decision. *See* **Exhibit D.**

Thus, not only does the Philippine Family Code establish the marriage was void *ab initio*, but also a court of competent jurisdiction, (in the place where the purported marriage was "celebrated"), declared the marriage to be void *ab initio*.

On November 13, 2003, Ms. Camara filed a second naturalization application, which is the subject of this petition for review. On October 20, 2005, the USCIS once again denied the application, still contending that despite her marriage being void *ab initio*, the USCIS was effectively ignoring or disregarding the Philippine Family Code and Philippine court decree, and contended that Ms. Camara was somehow "married" at the time that she immigrated in the status as an unmarried daughter of a United States citizen. *See* **Exhibit E.** As such, the USCIS

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

contended that her *void ab* initio marriage was "valid" and she was ineligible for naturalization, <u>because she lacked the required five years of legal permanent residence in the United States</u>. The USCIS also denied the application, alleging Ms. Camara gave "false testimony" concerning her marital status and therefore failed to demonstrate good moral character. In so doing, the USCIS ignored, disregarded, or refused to recognize applicable statutes and a valid Philippine Court decree, declaring that marriage void *ab initio*.

On or about November 17, 2005, Ms. Camara filed a form N-336 requesting a hearing on the decision in naturalization proceedings. On December 19, 2005, a review hearing was conducted.

On August 23, 2006, the USCIS issued an N-336 hearing decision, affirming its denial. *See* **Exhibit F.**

Ms. Camara timely filed her petition for review in the United States District Court for the Northern District of California, to review the erroneous N-336 hearing decision.

//

//

//

//

//

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

- 6 -

## IV.
## JURISDICTION STATEMENT

District Courts have jurisdiction, pursuant to INA § 310(c), 8 U.S.C. § 1421(c), to review denials of applications for naturalization.

INA § 310(c), 8 U.S.C. § 1421(c) provides:

> *"(c) Judicial Review*
> *A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under Section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of Title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application."*

In the instant case, on December 19, 2005, Ms. Camara had a review hearing in Oakland, California on the denial of her application for naturalization. On or about August 23, 2006, USCIS District Director, David N. Still, for the San Francisco local office, issued a hearing decision, affirming the denial of the naturalization application. *See* **Exhibit F.** Because Ms. Camara resides in Daly City, San Mateo County, California, the United States District Court for the Northern District of California retains jurisdiction over the instant petition for review.

# V.
## UNDER PHILIPPINE LAW, MS. CAMARA'S MARRIAGE WAS VOID *AB INITIO* SUCH THAT SHE LAWFULLY ENTERED THE UNITED STATES AS AN "UNMARRIED" DAUGHTER.

It is well established that the validity or invalidity of a marriage is determined by the law of the place of celebration. <u>Matter of Gamero</u>, 14 I.&N. Dec. 674 (BIA 1974); <u>Matter of Levine</u>, 13 I.&N. Dec. 244 (BIA 1969); <u>Matter of Adamo</u>, 13 I.&N. Dec. 26 (BIA 1968). Thus, the validity of Ms. Camara's 1991 marriage depends on whether, under Philippine law, a marriage is "valid" if it is celebrated without a marriage license. As will be shown, a marriage celebrated without a marriage license is void *ab initio*.

With respect to void marriages, Article 35 of the Philippine Family Code provides in relevant part as follows: [3]

> "Art. 35. <u>The following marriages **shall be void from the beginning**</u>:
>
> *(1) Those contracted by any party below eighteen years of age even with the consent of parents or guardians;*
> *(2) Those solemnized by any person not legally authorized to perform marriages unless such marriages were contracted with either or both parties believing in*

---

[3] *See* **Exhibit G –** Fax from the Library of Congress (which provides information on the interpretation of foreign laws) regarding Article 35, Family Code of the Philippines. Included in the fax is an annotation regarding Art. 35 and the fact that a marriage license is a prerequisite for a valid marriage in the Philippines.

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

- 8 -

> *good faith that the solemnizing officer had the legal authority to do so;*
> *(3) <u>Those solemnized without license, except those covered by the preceding Chapter;</u>*
> *(4) Those bigamous or polygamous marriages not failing under Article 41;*
> *(5) Those contracted through mistake of one contracting party as to the identity of the other; and*
> *(6) Those subsequent marriages that are void under Article 53."*
> [Emphasis added.]

Article 34, (the "preceding chapter") states that no license "shall be necessary for the marriage of a man and a woman who have lived together as husband and wife for at least five years and without any legal impediment to marry each other." Ms. Camara's marriage was <u>not</u> an Article 34 marriage (as she did not live with her "spouse" for five years, and did not purport to marry under Article 34), such that Article 35 governs.

Here, Ms. Camara's marriage was void from the beginning pursuant to paragraph 3 of Article 35 because <u>it was performed without a valid marriage license</u>. Since Ms. Camara did not fulfill the requirements of Article 34, the "exception" to the ground for a void *ab initio* marriage under paragraph 3 of Article 35 does not apply.

Since the issue in this case is whether Ms. Camara was "married" at the time of her entry into the United States, Philippine law expressly provides that such

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

marriage was void *ab initio*, as it was performed without a marriage license. Matter of Agustin, 17 I.&N. Dec. 14 (BIA 1979). *See* Mayo v. Schiltgen, 921 F.2d 177, 180 (8th Cir. 1990) (remanding for determination as to validity of marriage where petitioner "submitted substantial authority supporting her argument that … the marriage is void under Philippine law").

When a marriage is void in the jurisdiction in which it was celebrated, it cannot be considered "valid" for immigration purposes. Matter of Dela Cruz, 14 I & N Dec. 686 (BIA 1974) (which concluded that a void marriage between first cousins under Philippine law could not be used for immigration purposes). Since Ms. Camara's 1991 marriage was void *ab initio* and had no legal effect from the very beginning, she was legally "single" when she entered the United States in 1993. Accordingly, Ms. Camara had a "legal" entry.

### VI.
### IT IS NOT NECESSARY TO "RELATE BACK" THE VOID *AB INITIO* DECISION OF THE PHILIPPINE COURT TO INVALIDATE MS. CAMARA'S 1991 MARRIAGE.

To prove the validity of Ms. Camara's admission as an unmarried daughter of a U.S. citizen, all that must be shown is that her 1991 marriage was not valid at the time she entered the U.S. Clearly, under Philippine law, as declared by a competent Philippine Court, Ms. Camara's 1991 marriage was never lawful, as it was void *ab initio*.

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

In the present case, the USCIS N-336 Hearing Decision (bottom of page 2 – top of page 3) cites Matter of Agustin, 17 I.&N. Dec. 14 (BIA 1979) to support its position:

> "In Matter of Agustin 17 I.&N. Dec. 14 (BIA 1979), plaintiff argued that her Philippine marriage was not valid because she did not freely consent, a valid marriage license was not issued, and the marriage was not properly solomized. The BIA, however, determined that the marriage defects referred to did not appear to be fatal to the validity of the marriage. Id. at 15."

The USCIS's analysis is misplaced. The Board of Immigration Appeals ("Board" or "BIA") in Matter of Agustin, found that the defects in the marriage referred to by the respondent in that case did not appear to be fatal to the validity of the marriage because that respondent failed to cite authority clearly establishing the marriage would be void *ab initio* under Philippine law. Id.

The Board further went on to say:

> "The respondent <u>has not introduced any evidence, other than her own testimony, to support her claim that no marriage license was, in fact, issued</u>. Accordingly, we find that the evidence does not support a finding that her marriage to Francisco Ignacio was invalid under Philippine law because of the lack of proper solemnization or a marriage license."
> Id. at 16. (Emphasis added)

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

Ms. Camara's case is quite different from the respondent's in <u>Matter of Agustin</u>, because Ms. Camara has presented substantial and persuasive (if not conclusive) evidence, showing she did not have a valid marriage license. For example, on August 2, 2001, <u>the Civil Registrar of Carmona, Cavite, Philippines issued a certificate establishing no marriage license was issued to Ms. Camara and Mr. Gonzalez</u>. Instead, the referenced marriage license was issued to a different couple, Rolando Sarenas and Cristina Francisco. *See* **Exhibit B.**

Furthermore, on July 28, 2003, <u>the Regional Trial Court in the Philippines issued a judgment declaring the 1991 marriage between Ms. Camara and Mr. Gonzalez "void *ab initio* for having been celebrated without a valid marriage license</u> in accordance with par.3 of Article 35 of the Family Code." *See* **Exhibit D.**

Ms. Camara provided overwhelming documentary evidence and proof that her marriage was performed without the required marriage license. This is far more than her "own testimony" which was relied on by the alien in <u>Matter of Agustin</u>. Accordingly, Ms. Camara established that her marriage in the Philippines was void in accordance with the rationale in <u>Matter of Agustin</u>.

USCIS further misapplied <u>Matter of Agustin</u> with the following:

> *"The BIA also determined that whether the marriage ceremony was voidable is immaterial since a voidable marriage is regarded as valid until annulled or otherwise terminated. Id. at 16. Using the same reasoning, even if the marriage*

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

> *was found to be void ab initio, it would be void from the date that the Regional Trial Court issued the order nullifying the marriage. Hence, you were a married daughter at the time of entry into the U.S. in 1993 as the decree was not issued until 2003."*
> See **Exhibit F-**USCIS N-336 decision (bottom of page 2 – top of page 3).

The reasoning of the USCIS is wrong and misplaced. There is a significant difference between a "void" and "voidable marriage." The USCIS freely interchanges these terms, as though they mean one and the same thing. Ms. Camara's marriage was "void," not merely "voidable." Even if there never had been an annulment of Ms. Camara's purported 1991 "marriage," her marriage would still have never legally occurred, as the annulment merely declared the existing fact that the marriage was invalid or void from the beginning. See Estate of Gregorson, 160 Cal. 21, 26 (1911). [4]  In this case Ms. Camara's marriage was void from its inception, not from the date that the Regional Trial Court issued the order nullifying the marriage, as the USCIS incorrectly contends.

---

[4] California law makes a distinction between void and voidable marriages. Estate of Gregorson, 160 Cal. 21, 25 (1911). A "void" marriage is a marriage that is invalid from the beginning, while a "voidable" marriage is one which is capable of being annulled. Id. at 24-25. With respect to a void marriage, the marriage was never valid at any time, and an annulment is a mere formality that "merely declares an existing fact–viz., that the marriage is void–and this fact may be shown even though it may not have been so adjudicated." Id. at 26. An annulment is not "the exclusive method of questioning the validity of the purported marriage." Id. Only when a marriage is voidable is an annulment required to make the marriage invalid. Id. In addition, (Footnote continued on following page)

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

Furthermore, the USCIS decision cites <u>Hendrix v. INS</u>, 583 F.2d 1102 (9th Cir. 1978) for the proposition that marriages declared void at inception or annulled will not relate back to cure a ground of exclusion. *See* **Exhibit F**-USCIS N-336 decision (top of page 3). However, Ms. Camara's case is distinguishable from <u>Hendrix</u> because the petitioner in Hendrix argued that her marriage was invalid because it was obtained by <u>force</u> -- a subjective ground.

A **<u>void marriage</u>** is one which does not comport with the legal requirements under the law of the place of celebration, and is not valid for immigration purposes. **<u>A void marriage cannot be made valid</u>**.

A **<u>voidable marriage</u>**, on the other hand, is one that, while it may be invalid at inception, can nevertheless be made valid by some act of the couple, or by "ratifying" the relationship (i.e. a person marries under mistake or duress, but does not pursue annulment. In such a case, the marriage, although "voidable" remains valid). A void marriage, on the other hand, such as a marriage celebrated without a license, or where the solemnizing officer lacks authority to perform the wedding, or incestuous, or same sex marriages, <u>can never be "valid", for any purpose</u>. The

---

California law provides that if a marriage is void in the jurisdiction (other than California) where it was performed, it is void in California. <u>Estate of Levie</u>, 50 Cal.App.3d 572, 576 (1975).

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

- 14 -

USCIS simply does not have the power or authority to effectively declare a void marriage as "valid."

Furthermore, under California law, a marriage obtained by <u>force</u> is merely "<u>voidable</u>," not "<u>void</u>." Thus, <u>Hendrix</u> can be distinguished because it involved a <u>voidable</u> marriage (obtained by force), whereas Ms. Camara's 1991 marriage involved a <u>void</u> marriage, based on a lack of a marriage license -- an objective ground.[5]

We fully agree with the USCIS that <u>subjective</u> grounds for annulment, such as force, fraud, mistake, etc., depend on the person's <u>subjective state of mind</u>, and could be used to "manipulate" immigration laws, (as it is difficult to establish the veracity of a person's <u>subjective</u> state of mind). However, marriages performed without a license, or where the solemnizing officer lacks authority to perform the wedding, incestuous marriages, etc. <u>involve objective factors</u>, which are incapable of being manipulated. <u>Hendrix</u> involved <u>subjective</u> grounds for annulment (i.e., force, which is merely <u>voidable</u>), whereas Ms. Camara's marriage is based on <u>objective</u> grounds, (no license, and is <u>void</u> *ab initio*).

---

[5] A void marriage (Ca Fam §§ 2200-2201) is invalid and a nullity from its inception. It never legally existed and its invalidity may be shown in any proceeding where the fact of marriage is material (i.e. by collateral attack). [<u>In re Gregorson's Estate</u> (1911) 160 Cal.21]. On the other hand, a voidable marriage (Ca Fam §§ 2210) is valid for all civil purposes between the parties (Footnote continued on following page)

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

Because Ms. Camara's marriage was void (not voidable) from the very beginning, it is not necessary to "relate back" the decision of the Philippine Court declaring the marriage void *ab initio*. Because of a lack of a marriage license, the 1991 marriage was void and, legally, <u>never existed</u>. Given that Ms. Camara's marriage was void (and not merely voidable), the decision of the Philippine Court was not actually necessary to make the marriage invalid, but rather was obtained to eliminate any doubt as to Ms. Camara's "single" status when she entered the United States.

Assuming, *arguendo*, that the annulment of Ms. Camara's 1991 marriage would need to be "related back" to the 1991 marriage to validate Ms. Camara's unmarried status, the "relation back" doctrine still can be applied to the annulment. The "relation back" doctrine is a legal fiction created to ensure "substantial justice." <u>Matter of Magana</u>, 17 I.&N. Dec. 111 (BIA 1979). The "relation back" doctrine will not be applied if doing so would result in a gross miscarriage of justice. <u>Matter of Castillo-Sedano</u>, 15 I.&N. Dec. 445 (BIA 1975). Where the government determines that a person received immigration benefits by concealing

---

and against the world until adjudged a nullity; i.e. the marriage is invalidated only from the time it is so declared by a court of competent jurisdiction. [<u>In re Gregorson's Estate</u>, supra].

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

a disqualifying marriage, it will not allow that person to benefit from the application of the "relation back" doctrine. <u>Matter of Magana</u>, supra.

In <u>Matter of Magana</u>, the Court found that the respondent did not truthfully testify with respect to why he believed he was not previously married. Due to the misrepresentations, the Court felt that justice "would be better served by not relating the Washington decree back for immigration purposes." Furthermore, the Court in <u>Matter of Astorga</u>, 17 I.&N. Dec. 1 (BIA 1979), found that nearly all cases which declined to apply the relation back doctrine involved facts where "either fraud, misrepresentation or manipulation of the immigration laws was a consideration . . . ." <u>Id</u>.

In the instant case, Ms. Camara's 1991 marriage was void, based upon Article 35 of the Philippine Family Code. As such, Ms. Camara clearly was not married at the time she entered as an unmarried child of a U.S. citizen. Given that Ms. Camara did not commit fraud or make a misrepresentation when she made her 1993 entry, the annulment <u>should</u> relate back to the time of her 1991 marriage in order to achieve a just result. Simply put, the relation back doctrine cannot and should not be used or manipulated by the USCIS to effectively declare as "valid" a marriage that was void *ab initio*. Such a proposition would nullify applicable laws and a valid Court decree.

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

# VII.
# IT WAS IMPROPER TO FIND THAT MS. CAMARA LACKED GOOD MORAL CHARACTER.

The USCIS improperly determined that Ms. Camara "lied to obtain an immigration benefit [she] was not entitled to and would not have obtained had [she] spoken the truth about [her] marital status." (USCIS N-336 Hearing Decision at page 3). The USCIS is alleging that Ms. Camara made a misrepresentation at the time of her entry. However, in Matter of S- and B-C-, 9 I.&N. Dec. 436, 448-449 (A.G. 1961), the Attorney General defined the elements of a material misrepresentation as:

> *"A misrepresentation made in connection with an application for visa or other documents, or with entry into the United States, is material if either:*
>
> *(1) the alien is excludable on the true facts, or*
> *(2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might as well result in a proper determination that he be excluded."*
> [Emphasis added.]

In the case at bar, the "true facts" are that Ms. Camara was not lawfully married, therefore was not excludable, and consequently made a lawful entry. In essence, if the "true facts" are that Mr. Camara's 1991 marriage was not legally valid under Philippine law, she did not misrepresent her marital status.

PETITIONER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

- 18 -

# VIII.
# CONCLUSION

It is well established that the validity (or invalidity) of a marriage is determined by the law of the place of celebration. In this case, Ms. Camara has conclusively established that her 1991 marriage was <u>not valid</u> under Philippine law. She cites the Philippine Family Code (Article 35(3)) and also obtained a valid court decree to that effect. Accordingly, since her 1991 marriage was invalid, her entry into the United States, as a single daughter of a U.S. citizen, was valid and lawful.

Given the above, Ms. Camara has established that the USCIS erred in categorizing her status as "married" at the time of her entry into the United States and consequently erred in denying her application for naturalization. For this reason, Ms. Camara asserts that there are no genuine issues of material fact warranting a trial in this matter, and that she is entitled to judgment as a matter of law under Fed. R. Civ. P. 56(a).

Respectfully submitted,

DATED: October 9, 2007    Law Offices of Michael J. Gurfinkel

_____/S/_____
Michael J. Gurfinkel, Esq.
219 North Brand Boulevard
Glendale, CA 91203-2609
(Michael@gurfinkel.com)