## DECLARATION OF MICHAEL J. GURFINKEL

I, Michael J. Gurfinkel, declare as follows:

1.   I am an attorney, licensed in California and have been an active member of the State Bar of California since 1980.

2.   Attached hereto are true and correct copies of the following documents, referenced in the accompanying Memorandum of Points and Authorities:

A.   **Exhibit A** is a certified copy of a marriage contract, dated November 14, 1991, between Maya C. Camara and Anthony Dave Gonzalez. (The marriage contract references Marriage License No. 9935890). The original certified copy of this marriage contract was obtained by my firm from the National Statistics Office (NSO) in the Philippines. The copy of the marriage contract was then authenticated on July 27, 2007, by the Philippine Department of Foreign Affairs in Manila.

B.   **Exhibit B** is certification regarding Marriage License No. 9935890 from the Office of the Municipal Civil Registrar of Carmona, Cavite, Philippines. (The marriage license number is referenced in Ms. Camara's 1991 marriage contract). It certifies that Marriage License No. 9935890 was issued in favor of Mr. Rolando Sarenas and Miss Cristina Francisco, and not Maya C. Camara, the Petitioner in this case.

C.   **Exhibit C** is a copy of the I-551 Stamp in the Petitioner's passport, as evidence of her admission into the U.S.

D.   **Exhibit D** is a certified copy of Decree/Certification of Finality by the Republic of the Philippines Regional Trial Court. The document was authenticated on July 27, 2007, by the Philippine Department of Foreign Affairs in Manila.

-1-

E.    **Exhibit E** is a copy of the USCIS's Denial of Naturalization, dated October 20, 2005.

F.    **Exhibit F** is a copy of the N-336 Hearing Decision sent on August 23, 2006 by the USCIS.

G.    **Exhibit G** is an excerpt concerning Article 35 of the Family Code of the Philippines provided by the Library of Congress.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this _____ day of October, 2007, at Glendale, California.

_____
MICHAEL J. GURFINKEL

-2-

**EXHIBIT A**

Form A

SN 06A-732165



# DEPARTMENT OF FOREIGN AFFAIRS
M a n i l a

TO ALL WHOM THESE PRESENTS SHALL COME, GREETINGS:

I, _____ PAUL B. LEDESMA _____ , Authentication Officer of the Department

Foreign Affairs, do hereby certify that _____ LUCY B. AQUINO _____ ,

ose name appears signed in the attached certificate, was at the time

signing, _____ Administrative Aide, NSO _____

~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~ duly appointed and qualified

ign the certificate; and that full faith and credit may be given to her/his

or the contents of the annexed document(s), the Department assumes

sponsibility.

FURTHER CERTIFY that I am familiar with her/his handwriting and

believe that the signature and seal affixed to the said certificate

e uine.

IN WITNESS HEREOF, I have
hereunto set my hand at the
City of Manila, Philippines, this
27thday of _____ JULY _____ 200 7.

PAUL B. LEDESMA
**Authentication Officer**

Annexed document(s) is/are:

NSO certified true copy of
Marriage Certificate issued to
ANTHONY DAVE T. GONZALES &
MAYA C. CAHARA
**2591972**

26  July  2007. jbf.

O.R. No. _____ 033 DATE _____

(Not valid without DFA dry seal, red ribbon, documentary stamp
and if document bears any visible physical tampering, erasures or
if soiled and worn out).

Page 1 of 1. 1 Copy

Municipal Form No. 97 (From No. 2)

REGISTER No. 91-3/257

# MARRIAGE CONTRACT

City or Municipality of ........ MANILA ........ Province of ........ PHILIPPINES ........

| | Husband | Wife |
|---|---|---|
| Contracting Parties | ANTHONY DAVE T. GONZALEZ | MAYA C. CAMARA |
| (a) Age & Birthdate | 19 yrs. old  OCTOBER 21/72 | 18 yrs. old  MARCH 13/73 |
| (b) Birthplace | STO. MA. LUCIA, NOGARLAN, LAGUNA | KALOOKAN CITY |
| (c) Nationality | FILIPINO/ CATHOLIC | FILIPINO / CATHOLIC |
| (d) Residence | 58-19th. AVE. CUBID QUEZON | 44. GENERAL CONCEPCION ST. R.H. KALOOKAN CITY |
| Single widowed or divorced | SINGLE | SINGLE |
| Father | ERNESTO GONZALES | DOMINADOR CAMARA |
| Nationality | FILIPINO | FILIPINO |
| Mother | NIDY TORIAS | MARLOU CAMARA |
| Nationality | FILIPINO | FILIPINO |
| Person who gave consent or advice | RODOLFO  DE GUZMAN  QUEZON CITY | AMOR NILANBILIU  KALOOKAN CITY |
| (e) Residence | | |
| (f) Relation to contracting party | | |

NOTE: PARENTAL CONSENT FOR BOTH PARTIES HAS BEEN SOUGHT AND FAVORABLY GIVEN....

Place of marriage — Office of the Church of / House of / Birth of — CITY HALL, MANILA

Date of marriage — NOVEMBER  14, 1991

Marriage solemnized by — REVEREND JULLIE B. TORRES

(a) ....... MINISTER ....... (b) ....... C/O MANILA CITY HALL, MANILA .......
(Position)                                      (Address)

THIS IS TO CERTIFY, That I ........ ANTONY DAVE T. GONZALEZ ........ and
I, ........ MAYA  C. CAMARA ........ on the date and at the place above given, of our own free will
and accord, and in the presence of the person solemnizing this marriage and of the two witnesses named
below, both of age, take each other as husband and wife.

And I, ........ REVEREND JULLIE B. TORRES ........ MINISTER .......

CERTIFY: That on the date and at the place above written the aforesaid ANTHONY DAVE T. GONZALEZ
and ........ MAYA C. CAMARA ........ were with their mutual consent lawfully joined together in
holy matrimony by me in the presence of said witnesses, both of age; and I further certify that the
Marriage License No. ........ 9935890 ........ issued at CARMONA, CAVITE, on NOV. 8th. 1991
in favor of said parties, was exhibited to me or no marriage license was exhibited to me this marriage being
of an exceptional character performed under Art XXXXXXXX  of Rep. Art 386, and that the consent or
advice to such marriage was duly given, as required by law, by the person or persons above men-
tioned.

IN WITNESS WHEREOF, we signed, (or marked with our fingerprint) this certificate in triplicate
this ........ 14th ........ day of ........ NOVEMBER ........ 19  91.

ANTHONY DAVE T. GONZALEZ
(Contracting Party)

MAYA C. CAMARA
(Contracting Party)

WITNESSES

RODOLFO DE GUZMAN

AMOR NILANBILIU                     3140

REVEREND JULLIE B. TORRES
(Judge, Justice of the Peace, Mayor, Priest, Minister, etc.)
Authorization No. 033  Faculty expires on 12/31/91
(See back)

ND 000152970

③



7/12/07
Jones?
3291

CONTACE S/ CAMARA
11.78.91
MANILA

Republic of the Philippines
NATIONAL STATISTICS OFFICE
Manila

OFFICE OF THE CIVIL REGISTRAR-GENERAL

A CERTIFIED TRUE XEROX COPY
FOR THE CIVIL REGISTRAR - GENERAL

Lucy B. Aquino
Assistant Statistician

DATE VERIFIED: 7/11/07

VERIFIED BY:

3191

**EXHIBIT B**





Republic of the Philippines
Province of Cavite
**MUNICIPALITY OF CARMONA**



OFFICE OF THE MUNICIPAL CIVIL REGISTRAR

05 April 2002

**ATTY. MARIA ZORAIDA ZABAT TUAZON**
Branch Clerk of Court
Regional Trial Court
National Capital Judicial Region
Branch 107, Quezon City

Dear Atty. Tuazon:

Greetings!

This is with regards to the summon I received last April 1, 2002 re: Civil Case No. Q-02-46284 Anthony Dave T. Gonzales vs. Maya C. Camara-Gonzales.

Please be informed that I became the Municipal Civil Registrar of Carmona, Cavite effective July 31, 1998. A certified Machine Copy of my appointment is hereto attached as annex "A". I issued the certification dated 02 August 2001 based on what is written on the Logbook of Marriage License wherein Marriage License issued in 1991 by the former Civil Registrar were recorded. A Certified Machine Copy of which is hereto attach as annex "B" and as annex "C" is the Certified Machine Copy of pages 87 and 88 of the logbook of Marriage License wherein the names Rolando Sarenas and Cristina Francisco appeared as the recipient of Marriage License No. 9935890 which was issued on November 6, 1991.

One of the most important duty of the Civil Registrar is to register and keep records pertaining to births, marriage and deaths and to issue appropriate certification on any and all matters relative thereto.

Hoping that this would merit your kind consideration and understanding on my role as Municipal Civil Registrar.

Best regards and more power.

Very truly yours,

**LEODIVINIA C. ENCARNACION**
Municipal Civil Registrar

Cc:     Mr. Anthony Dave T. Gonzales
        Plantiff
        Office file

**CERTIFIED MACHINE COPY**

LEODIVINIA C. ENCARNACION
MUNICIPAL CIVIL REGISTRAR
CARMONA, CAVITE

5

CERTIFIED MACHINE COPY

ANNEX "A"

KSS Porma Blg. 33
(Narebisa, Setyembre 1993)

Repúblika ng Pilipinas
Lalawigan ng Kabite
Pamahalaang Bayan ng Carmona

TANGGAPAN NG PUNONG BAYAN

LEODIVINIA C. ENCARNACION
CARMONA, CAVITE

Ginoo / Gng. / Bb.:

Kayo ay hinirang na ____MUNICIPAL CIVIL REGISTRAR____

na may katayuang ____PERMANENTE____ sa

____MUNICIPAL CIVIL REGISTRAR____ sa pasahod na

TWO HUNDRED SIXTEEN THOUSAND THREE HUNDRED THIRTY SIX PESOS
(₱ 216,336.00)
ito ay magkakabisa sa petsa ng pagganap ng tungkulin subali't di aaga

sa petsa ng pagpirma ng puno ng tanggapan o appointing authority.

Ang appointment na ito ay ____PROMOSYON____
(Orihinal, Promotion, Atbp.)

At ayon sa Plantilya aytem Blg. ___127-97___ Pahina ___16___

Pinagtibay sa Permanent

VILMA B. ALTEA
DIRECTOR II
CIVIL SERVICE FIELD OFFICE
PROVINCE OF CAVITE
Awtorisadong Opisyal
Komisyon ng Serbisyo Sibil

8-12-98
Petsa

Sumasaiyo,

ATTY. ROY M. LOYOLA
Puno ng Tanggapan

July 31, 1998
Petsa ng Pagpirma

CERTIFIED MACHINE COPY

LEODIVINIA C. ENCARNACION
MUNICIPAL CIVIL REGISTRAR
CARMONA, CAVITE

(6)

3/8/07

3291

### Sertipikasyon

Ito ay nagpapatunay na lahat ng dapat gawin at mga kailangan dokumento para sa appointment na ito ay sa CSC MC # 38. s, 1993 ay nasunod na narebisa ko at napatunayang nasa ayos.

Ang posisyon ay nalathala sa  CSC-Bulletin  noong  Hunyo 30, 1998

AMELIA C. SAMSON
**Chairman**
**Personnel Selection Board**

### Sertipikasyon

Ito ay nagpapatunay na ang nahirang ay nagdaan sa pagsusuri ng Personnel Selection Board at kwalipikado.

ATTY. ROY M. LOYOLA
**Chairman**
**Personnel Selection Board**

### Mga Notasyon

_____
_____
_____
_____
_____
_____
_____

**ANUMANG BURA O PAGBABAGO SA AKSIYONG GINAWA NG KOMISYON NG SERBISYO SIBIL AY NAGPAPAWALANG-BISA SA PAGHIRANG NA ITO MALIBAN KUNG ANG PAGBABAGO AY NASUSULAT NA KINUMPIRMA NG KOMISYON.**

Petsa ng Paglabas sa KSS/Komisyon   OCT 2 5 1998

Mga Pagbibigyan ng kopya:

Orihinal - kopya ng nahirang
Pangalawang kopya - Para sa Komisyon ng Serbisyo Sibil
Pangatlo kopya - Para sa Ahensiya

6(a)



Republic of the Philippines
Province of Cavite
**MUNICIPALITY OF CARMONA**



OFFICE OF THE MUNICIPAL CIVIL REGISTRAR

# CERTIFICATION

Annex "B"

August 2, 2001

**TO WHOM IT MAY CONCERN:**

This is to certify that as per Registry Records of Marriage License filed in this office, Marriage License No. *9935890* was issued in favor of *MR. ROLANDO SARENAS and MISS CRISTINA FRANCISCO* on November 6, 1991.

No Marriage License appear to have been issued to *MR. ANTHONY DAVE T. GONZALES* and *MISS MAYA CAMARA* on November 8, 1991.

This certification is being issued upon the request of Michael J. Gurfinkel, Corp. through Ms. Norilyn W. Ramos for whatever legal purpose or intents it may serve.

Paid Under O.R. No. 0688057
Dated: August 2, 2001

**LEODIVINIA C. ENCARNACION**
Municipal Civil Registrar

CERTIFIED MACHINE COPY

**LEODIVINIA C. ENCARNACION**
MUNICIPAL CIVIL REGISTRAR
CARMONA, CAVITE

CERTIFIED MACHINE COPY

**LEODIVINIA C. ENCARNACION**
MUNICIPAL CIVIL REGISTRAR
CARMONA, CAVITE

⑦

| Reg. no. 87 | Date of Application | Contracting Party |
|---|---|---|
| 2006 | 10-25-91 | Hendrix R. Hamor |
| 2007 | " | Rhoman S. Guevarra |
| 2008 | " | Ruel V. Laude |
| 2009 | " | Randolph P. Cayabas |
| 2010 | " | Gregorio S. Festuyco |
| 2011 | " | Ariel C. Silva |
| 2012 | " | Edgar B. Espinosa |
| 2013 | " | Robert Earl S. Kreger |
| 2014 | " | Alberto G. Anilao |
| 2015 | " | William G. Chua |
| 2016 | " | Elmer A. Simbulan |
| 2017 | " | Ernesto Frono |
| 2018 | " | Jerry Roque dela Cruz |
| 2019 | " | Norberto L. Cruz |
| 2020 | " | Alfredo D. Nayle |
| 2021 | " | Ronaldo C. Pangelinan |
| 2022 | " | Romeo S. Reyes |
| 2023 | " | Peter Geoffrey R. Loresto |
| 2024 | " | Raul Moral |
| 2025 | " | Feliberto P. Derrota |
| 2026 | " | Joel L. Linga |
| 2027 | " | Fomio Iwano |
| 2028 | " | Romeo Quezada |
| 2029 | " | Raymond O. Ofalla |
| 2030 | " | Efren V. Fumbaga |
| 2031 | " | Tomas H. Baleza |
| 2032 | " | Mariano P. Garcia |
| 2033 | " | Dominador C. Villanueva |
| 2034 | " | Armonio D. Darganilles |
| 2035 | " | Fits F. Campasano |
| 2036 | " | Danilo P. Cabais |
| 2037 | " | Nicasio P. Acosta |
| 2038 | " | Eduardo Magallanes Jr. |
| 2039 | " | Fernando F. Funes |
| 2040 | " | Rolando Jarenas |

CERTIFIED MACHINE COPY

LEUDIVINIA C. ENCARNACION
MUNICIPAL CIVIL REGISTRAR
CARMONA, CAVITE


③

Annex "C"

| Contracting Party | Date of Issuance | License no. |
|---|---|---|
| Vilma Manuel | 11-6-91 | 9935856 |
| Lourdes I. Gabriel | " | 857 |
| Evangelyn S. Ristajo | " | 858 |
| Gilda Natividad S. Bajarias | " | 859 |
| Erlinda S. Servano | " | 860 |
| Analiza M. Guizzagan | " | 861 |
| Jacqueline C. Ureta | " | 862 |
| Anna Ly Lisa San Miguel Alberto | " | 863 |
| Ma. Carazon G. Dimaano | " | 864 |
| Anna Teresa Yu | " | 865 |
| Ma. Editha R. Rustia | " | 866 |
| Editha Fariñas | | 867 |
| Janeth M. Villanueva | " | 868 |
| Nazarene P. Quilot | " | 869 |
| Jelly G. Castañas | " | 870 |
| Caroline B. Braga | " | 871 |
| Annie C. de Leon | " | 872 |
| Jennifer B. Casaljay | " | 873 |
| Sally Canedo | | 874 |
| Gliceria Resuello | | 875 |
| Ma. Lourdes G. David | | 876 |
| Michelle N. Alvarado | | 877 |
| Luisa Estanislao | | 878 |
| Shirley J. Cervantes | " | 879 |
| Lolita S. Aquino | | 880 |
| Eden L. Abanto | " | 881 |
| Mary Aileen V. Rea | | 882 |
| Evelyn E. Romero | | 883 |
| Mercy D. Pena | | 884 |
| Inelda S. Basa | | 885 |
| Marelie M. Pelias | " | 886 |
| Melania P. Cabais | " | 887 |
| Atomita Samalila | " | 888 |
| Esmeralda M. Cañanes | " | 889 |
| Cristina Francisco | " | 890 |

CERTIFIED MACHINE COPY

LEODIVINIA C. ENCARNACION
MUNICIPAL CIVIL REGISTRAR
CARMONA, CAVITE

(9)

**EXHIBIT C**





BISA — *VISA*

8

BISA — *VISA*

9

**EXHIBIT D**



Form A                                      SN 06A-732444



# DEPARTMENT OF FOREIGN AFFAIRS
### Manila

**TO ALL WHOM THESE PRESENTS SHALL COME, GREETINGS:**

I, _____PAUL B. LEDESMA_____ , Authentication Officer of the Department

Foreign Affairs, do hereby certify that_____ROSALINDA G. SOLO_____ ,

ose name appears signed in the attached certificate, was at the time

signing, _____Legal Researcher, OIC, Regional Trial Court, Quezon City_____

~~pexxxxxxthexPresidentxMalacanangxManila~~ duly appointed and qualified

sign the certificate, and that full faith and credit may be given to her/his

or the contents of the annexed document(s), the Department assumes

sponsibility.

FURTHER CERTIFY that I am familiar with her/his handwriting and

believe that the signature and seal affixed to the said certificate

e uine.

IN WITNESS HEREOF, I have
hereunto set my hand at the
City of Manila, Philippines, this
27th day of _____JULY_____ 200 7

PAUL B. LEDESMA
**Authentication Officer**

Annexed document(s) is/are:

RTC Decree/Certificate of Finality
Civil Case No. Q-02-46284 re: Declaration of
Nullity of Marriage between ANTHONY DAVE T.
GONZALES & MAYA C. CAMARA
2591972

O.R. No. _____0393_____ DATE _____26 July 2007_____ ton
(Not valid without DFA dry seal, red ribbon, documentary stamp
and if document bears any visible physical tampering, erasures or
if soiled and worn out).

(13)

Republic of the Philippines
**REGIONAL TRIAL COURT**
National Capital Judicial Region
Branch 107, Quezon City

CERTIFIED TRUE COPY

ROSALINDA G. SOLO
LEGAL RESEARCHER/OIC

ANTHONY DAVE T. GONZALES,
          Petitioner,

    -versus-

CIVIL CASE NO. Q-02-46284
*For: Declaration of*
      *Nullity of Marriage*

MAYA C. CAMARA GONZALES,
MUNICIPAL CIVIL REGISTRAR
OF CARMONA, CAVITE and CITY
OF MANILA, and the OFFICE
OF THE CIVIL REGISTRAR
GENERAL, NCSO,
          Respondents.
x-------------------------x

## DECREE/CERTIFICATE OF FINALITY

This is to certify that a DECISION was rendered by the **HONORABLE ROSALINA L. LUNA PISON**, Presiding Judge of this Court on the above-entitled case on July 28, 2003 the dispositive portion of which reads as follows:

"*WHEREFORE, IN VIEW OF THE FOREGOING, judgment is hereby rendered, to wit:*

"*1. Declaring the marriage celebrated between the petitioner, ANTHONY DAVE GONZALES (GONZALEZ) and respondent, MAYA C. CAMARA on November 14, 1991 in Manila void ab initio under Articles 3 and 4 of the Family Code. Henceforth, they shall be governed by the complete separation of property. There being no properties to speak of, no pronouncement is hereby made thereon.*

"*2. Their child, Laurenz Anthony Camara Gonzales is hereby declared an illegitimate child. He shall remain in the custody of the respondent. He is entitled to receive support from the parties. There being no evidence on his support requirements and the ability of the respondent to give support, no /*

(14)

CERTIFIED TRUE COPY

ROSALINDA G. SOLO
LEGAL RESEARCHER/OIC

CERTIFICATE OF FINALITY
CIVIL CASE NO. Q-02-46286
pg. 02
x-------------------x

pronouncement is hereby made thereon *in the meantime.*

"3. Henceforth, the respondent shall be known by her maiden name, CAMARA.

"Let copy of this Decision be furnished the Local Civil Registrar of Manila where the marriage was celebrated and the Local Civil Registrar of Kalookan City so that the necessary correction shall be made on the birth certificate of Laurenz Anthony Gonzales upon the finality of this Decision."

WHEREAS, on September 18, 2003 a Resolution was issued by this Court, the dispositive portion of which reads as follows:

"WHEREFORE, IN VIEW OF THE FOREGOING, the Motion for Reconsideration filed by the Office of the Solicitor General has to be, as it is hereby DENIED."

There being no Notice of Appeal/Motion for Reconsideration/Action to Set Aside Judgment and Resolution interposed thereto as of this date, despite receipt of their copies thereof by Assistant City Prosecutor Elizabeth Pagdilao on August 11, and September 26, 2003; Office of the Solicitor General on August 13, and September 29, 2003; Atty. Renato Cunanan, counsel for the petitioner on August 11, and September 30, 2003; Maya Camara-Gonzales respondent on August 12, 2003 the above-cited Decision and Resolution are hereby declared **FINAL and EXECUTORY**.

January 22, 2004, Quezon City, Metro Manila

ATTY. MARIA ZORAIDA ZABAT TUAZON
Branch Clerk of Court

/ecs
Paid Under O.R. No. 18541827
O.R. No. 16541527

(15)

Republic of the Philippines
National Capital Judicial Region
**REGIONAL TRIAL COURT**
Branch 107, Quezon City

CERTIFIED TRUE COPY

ROSALINDA G. SOLO
LEGAL RESEARCHER/OIC

ANTHONY DAVE T. GONZALES,
          Petitioner

   - versus -       Civil Case No. Q 02-46284
                      *For: Declaration of Nullity*
                          *of Marriage under Par. 3 of*
                          *Art. 35 of the Family Code*

MAYA C. CAMARA GONZALES,
MUNICIPAL CIVIL REGISTRAR
of CARMONA, CAVITE and
CITY OF MANILA, and the OFFICE
Of THE CIVIL REGISTRAR GENERAL,
NCSO,
          Respondents.
x-----------------------------x

# D E C I S I O N

## Statement of the Case

In a verified petition filed on March 4, 2002 petitioner prayed that after due notice and hearing judgment be issued declaring his marriage to the respondent void ab initio for having been celebrated without a valid marriage license in accordance with par. 3 of Article 35 of the Family Code.

All the respondents were duly served summons. They all failed to file their responsive pleadings within the reglementary period. The case was referred to the Office of the City Prosecutor to determine collusion between the petitioner and Maya C. Camara Gonzales. Without prejudice to the report to be submitted, the case was set for pre-trial conference/trial. Asst. City Prosecutor (ACP) Evelyn Pascua Lee was ordered to appear for the State and see to it that the evidence is not fabricated or suppressed.

16

CERTIFIED TRUE COPY

ROSALINDA G. SOLO
LEGAL RESEARCHER/OIC

Civil Case No. Q 02 – 46284
DECISION
Page 2

-. ACP Evelyn Pascua Lee submitted her Collusion Report on October 4, 2002 recommending that the case be tried on the merits.

At the scheduled pre-trial conference on October 29, 2002, the petitioner and his counsel, Atty. Renato Cunanan appeared. ACP Elizabeth Pagdilao appeared as counsel for the State. There was no appearance from the respondents. The parties identified the issue as: Whether or not the petitioner is entitled to the relief prayed for. The petitioner marked in advance his documentary evidence, ACP Pagdilao manifested that she had not conferred with the respondents as of that moment and had nothing to propose or comment on the evidence to be presented. The pre-trial was therefore declared closed and terminated and set for the reception of petitioner's evidence.

The petitioner presented himself as his lone witness to substantiate the allegations in his petition. He filed his Memorandum.

### PETITIONER'S EVIDENCE

Petitioner met the respondent, Maya C. Camara Gonzales, hereinafter referred to as Maya, sometime in 1986. They became steadies and got married on November 14, 1991 at the City Hall of Manila (Exhibit "A"). Respondent's family secured all the documents needed and took care of the arrangements for the wedding. Their marriage was

Civil Case No. Q 02 – 46284
DECISION
Page 3

CERTIFIED TRUE COPY

ROSALINDA G. SOLO
LEGAL RESEARCHER I OIC

blessed with a son, Laurenz Anthony Camara Gonzales who was born on May 10, 1992 (Exhibit "").

In 1993, the respondent, Maya, left for the United States of America (US). She came back to the country in 1995 and since then had come back and forth to the US in 1997 and 1998. Their son is with respondent. .

While in the US, the respondent, Maya, called petitioner in 2000 and informed him that their marriage is void for lack of marriage license and that she would give him the documents. Petitioner did not know how to react. He did not confront her over the phone but cried. He was then hoping that with the 8 years that respondent was away, they would already be together. But the respondent, Maya, advised him to file this case. So, he consulted his mother and filed this case. They made verifications on the marriage license issued to them for their wedding.

Mr. Michael Gurfinkel who referred the case to petitioner's lawyer secured a Certification dated August 2, 2001 from Ms. Leodivini C. Encarnacion, Civil Registrar of Carmona, Cavite. They discovered that Marriage License No. 9935890 purportedly issued to them for their wedding was issued in favor of Mr. Rolando Sarenas and Miss Cristina Francisco on November 6, 1991 and that no marriage license was issued to Mr. Anthony Dave T. Gonzales and Miss Maya Camara on November 8, 1991 (Exhibit "B"). The certified true copy of the Logbook of Marriage License of the Municipal Civil Registrar of Carmona, Cavite also

(18)

CERTIFIED TRUE COPY

ROSALINDA G. SOLO
LEGAL RESEARCHER/OIC

il Case No. Q 02 – 46284
ECISION
Page 4

showed that the entry No. 2040 dated November 6, 1991 to the effect that the said marriage license was indeed issued in favor of Rolando Sarenas and Cristina Francisco (Exhibit "C").

### RESPONDENTS' EVIDENCE

All the respondents were duly summoned but they failed to file their responsive pleadings. The respondent, Maya C. Camara Gonzales did not also appear despite notice.

### THE POSITION OF THE STATE

The Office of the Solicitor General entered its appearance on March 25, 2003 authorizing the Office of the City Prosecutor to appear in this case. Assistant City Prosecutor Elizabeth Pagdilao manifested that the State had nothing to present to rebut the petitioner's evidence.

### THE ISSUE:

Is the petitioner entitled to the relief prayed for?

### DISCUSSION/EVALUATION

Article 3 of the Family Code provides:

*The formal requisites of marriage are:*

*(1)   x   x   x*

*(2)   A valid marriage license except in the cases provided for in Chapter 2 of this Title; and*

*(3)   x   x   x*

(19)

Civil Case No. Q 02 – 46284
DECISION
Page 5

CERTIFIED TRUE COPY

ROSALINDA G. SOLO
LEGAL RESEARCHER/OIC

Article 4 of the same Code further provides:

"**The absence of any of the essential or formal requisites shall render the marriage void ab initio except as stated in Article 35 (2).**"

Evaluating the evidence presented, this Court finds that the petitioner sufficiently established that Marriage License No. 9935890 purportedly issued to him and the respondent on November 8, 1991 which was used as a basis for their wedding on November 14, 1991 at the City Hall of Manila, was in fact issued to Mr. Rolando Sarenas and Miss Cristina Francisco on November 6, 1991. A valid marriage license is a requisite of marriage and the absence thereof, subject to certain exceptions, renders the marriage void <u>ab initio</u> (Cariño vs. Cariño, 351 SCRA 127). This being so, their marriage which was celebrated on November 14, 1991 in Manila was celebrated without a valid marriage license and therefore void <u>ab initio</u>.

WHEREFORE, IN VIEW OF THE FOREGOING, judgment is hereby rendered, to wit:

1. Declaring the marriage celebrated between the petitioner, ANTHONY DAVE GONZALES (GONZALEZ) and respondent, MAYA C. CAMARA on November 14, 1991 in Manila void ab initio under Articles 3 and 4 of the Family Code. Henceforth, they shall be governed by the complete separation of property. There being no properties to speak of, no pronouncement is hereby made thereon.



CERTIFIED TRUE COPY

ROSALINDA G. SOLO
LEGAL RESEARCHER/OIC

vil Case No. Q 02 – 46284
DECISION
Page 6

2. Their child, Laurenz Anthony Camara Gonzales is hereby declared an illegitimate child. He shall remain in the custody of the respondent. He is entitled to receive support from the parties. There being no evidence on his support requirements and the ability of the respondent to give support, no pronouncement is hereby made thereon in the meantime.

3. Henceforth, the respondent shall be known by her maiden name, CAMARA.

Let a copy of this Decision be furnished the Local Civil Registrar of Manila where the marriage was celebrated and the Local Civil Registrar of Kalookan City so that the necessary correction shall be made on the birth certificate of Laurenz Anthony Gonzales upon the finality of this Decision.

The parties are hereby ordered to verify the service of this Decision to the parties concerned for the issuance of certificate of finality.

SO ORDERED.

July 28, 2003, Quezon City, Metro Manila.

ROSALINA L. LUNA PISON
Presiding Judge

RLLP/mzzt/mls
Cc:
OCAD          LCR                LCR        NSO
SC, Manila    Carmona, Cavite    Manila     OSG

ACF Elizabeth Pagdilao Atty. Renato Cunanan  Maya Camara

# EXHIBIT E






Direct all responses by mail to the office listed below:
IMMIGRATION AND NATURALIZATION SERVICE
630 Sansome St # 2ND Fl    Reception
San Francisco CA  94111

**U.S. Department of Justice**
*Immigration and Naturalization Service*

Maya Canete Camara                          **Refer to this file:** WSC*001048821
294 Avalon Drive                            **Alien Number:** A 044 289 385
Daly City CA  94015                         **Date:**

                                            OCT  2 0  2005

## DECISION

On December 20, 2004, you appeared for an examination of your application for naturalization, which was filed in accordance with Section 316(a) of the Immigration and Nationality Act.

Pursuant to the investigation and examination of your application it is determined that you are ineligible for naturalization for the following reason(s):

### See Attachment(s)

If you desire to request a review hearing on this decision pursuant to Section 336(a) of the Act, **you must file a request for a hearing <u>within 30 Days</u> of the date of this notice.** If no request for hearing is filed within the time allowed, this decision is final. A request for hearing may be made to the District Director, with the Immigration and Naturalization office which made the decision, on Form N-336, **Request for Hearing on a Decision in Naturalization Proceedings under Section 336 of the Act, together with a <u>fee of $250</u>.** A brief or other written statement in support of your request may be submitted with the Request for Hearing.

Sincerely,

David N Still
District Director

Cc: Attorney, Michael J. Gurfinkel

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
Form N-335



Attachment(s) to Form N-335

Applicant: Maya Canete Camara
Application for Naturalization, Form N-400
Alien Number: A044289385
Application ID: WSC*001048821
Page 1 of 3

Your application is hereby denied in accordance with the Title 8 Code of Federal Regulations
Section(s) listed below:

On November 13, 2003, you filed an application under Section 316(a) of the Immigration and Nationality Act, as
amended, herein the Act. On December 20, 2004, an officer of the Immigration and Naturalization Service
interviewed you to determine your eligibility for naturalization. During that interview you testified that you had
legally married only one time in your life to your spouse, Anthony Dave Tobias Gonzales, on April 19, 1995. To
confirm this testimony, an affidavit of sworn testimony was taken, wherein you swore that you had never been
married prior to October of 1993, that you were single when you immigrated to the United States, and that your
child was born illegitimate. In your affidavit of sworn statement you further stated that you were married to your
current spouse in 1991, "but was not a legally valid marriage. It was a marriage without marriage license."

A review of your immigrant record revealed that you subsequently immigrated to the United States on October 24,
1993, as an unmarried daughter of a United States citizen.

In an attempt to verify your testimony, an overseas investigation was conducted. Results revealed that you had, in
fact, married Anthony Gonzales on November 14, 1991 in the Philippines. Had you divulged your marital status at
the time of your September 28, 1993 immigrant visa interview, your immigrant application would have been denied
and the approval of your petition revoked. It is noted that you signed a Statement of Marriageable Age Applicant at
the time of your visa interview, representing that you had never been married and acknowledging that you would be
rendered ineligible for immigration should you marry before immigrating to the United States. In addition, had you
revealed that you were married at the time of entry into the United States on October 24, 1993 you would have been
denied lawful entry into the United States, as you were excludable.

The Service acknowledges that you have submitted a decree/certificate of finality showing that you obtained a court
order from Regional Trial Court in the Philippines, altering the marriage date from November 14, 1991 to October
24, 1993. The Service cannot recognize this nunc pro tunc order. The fact remains that you were legally married to
Anthony Gonzales at the time you immigrated and you misrepresented that fact to this Service.

It is well-established law that the validity to a marriage is determined by the law of the place of celebration, in the
Philippines. Matter of Gamero, 14 I. & N. Dec. 674 (BIA 1974).

Pursuant to Article 2 of the Philippine Family Code, no marriage shall be valid, unless these essential requisites are
present:
1. Legal capacity of the contracting parties who must be a male and a female; and
2. Consent freely given in the presence of the solemnizing officer.

In addition, under Article 3 of the Philippine Family Law, the formal requisites of marriage are:
1. Authority of the solemnizing officer;
2. A valid marriage license except in the cases provided for in Chapter 2 of this Title;
3. A marriage ceremony which takes place with the appearance of the contracting parties before the
   solemnizing officer and their personal declaration that they take each other as husband and wife in the
   presence of not less than two witnesses of legal age.

The absence of any of the essential or formal requisites shall render the marriage void ab initio, except as stated in
Article 35 (2). See Article 4 of the Philippine Family Code.



Applicant: Maya Canete Camara
Application for Naturalization, Form N-400
Alien Number: A044289385
Application ID: WSC*001048821
Page 2 of 3

During your examination on December 20, 2004, you presented a certificate from the Regional Trial Court, Republic of Philippines, there is nothing in the court's decision or in the Service's record of proceeding to suggest that you or your husband lacked the intent or the capacity to marry. Furthermore, you were married in a civil ceremony before a minister, who is an authorized solemnizing officer pursuant to Article 92. To the contrary, it is clear in the decision of the Philippine court that the marriage was a blessed marriage by family members and later gave birth to your child from this marriage. The decision even goes as far to state that your husband did not want to complete this void ab initio process and was devastated in discovering that the marriage license was improperly registered. In fact, you received notice regarding the action and you failed to appear or submit any evidence in the case. Therefore, the Regional Trial Court did not have any knowledge as to the truth or falsity of the evidence being submitted.

Philippines Family Code stated "that an improperly registered marriage license gives the parties the right to void ab initio or annul an otherwise valid marriage". In the case of Matter of Agustin, 17 I. & N Dec. 14 (BIA 1979). Even if the marriage is found to be void ab initio, it would only deemed to be void from the date that the Regional Trial Court issued the order nullifying the marriage. As such, you wold have been a married daughter to a United States Citizen at the time your entry into the United States in 1993 as the decree was not issued until 2003.

It is well settled law that an annulment or nullity of a marriage being sought to cure an illegal entry based on the fact that the applicant's immigration status at the time of entry depended upon being unmarried in not recognized for immigration purposes. Matter of Wong, 16 I. & N. Dec. 87 (BIA 1977); see also Hendrix v. INS, 583 F.2d 1102 (9th Cir. 1978). Regardless of what effect the courts might give to a decree of annulmen, for immigration purposes, the Services is not obliged to give retroactive effect to it so as to cure a violation of law respecting entry into the United States. It is the marital status at the time of entry that should serve as the basis for one alien's preferment over others under the quota system. Hendrix v. INS, 583F.2d at 1103. When you applied for your immigrant visa, you did not indicate to former INS officials that you were married or that you had a child. You signed a statement of marriable age prior to your entry into the United States.

Section 316 of the Act provides in pertinent part that no person shall be naturalized unless immediately preceding the date of filing of his application for naturalization he has resided continuously in the United States for at least five years, after being lawfully admitted for permanent residence.

It is well settled that an alien who is excludable at entry does not acquire a lawful status. In Re Longstaff, 716 F.2d 1439 (5th cir. 1983) the court decided that an "admission is not lawful if it is regular only in form. The term lawfully denotes compliance with substantive legal requirements, no merely procedural regularity..." In the case of Monet v. INS, 791 F.2d 752 (9th cir. 1986); and the case of Matter of T, 6 I&N Dec. 136 (A.G. 1934), the court held that the alien's entry was not lawful because he obtained an immigration visa by fraud. In the case of Fedorenko v. United States, 449 U.S. 490 (1981), the court held that because an alien was not lawfully admitted to the United States, the applicant was ineligible for naturalization.

At the time you immigrated to the United States as an unmarried daughter of a United States citizen, you were ineligible for such status, as you were in fact married. Inasmuch as you were not lawfully admitted to the United States as a lawful permanent resident, you do not at this time meet the five years continuous residence requirement, and you are ineligible for naturalization.

In addition, during your interview before an officer of the Immigration and Naturalization Service, on November 16, 1999, you provided false testimony when you claimed that you were married one time. Section 316(a) of the Act states that "no person...shall be naturalized unless such applicant during the five years immediately preceding the date of filing his application...has been and still is a person of good moral character..."



Applicant:  Maya Canete Camara
Application for Naturalization, Form N-400
Alien Number:  A044289385
Application ID:  WSC*001048821
Page 3 of 3

Title 8, Code of Federal Regulations, part 316.10(b)(2) delineates what does not meet the good moral character requirement, stating that "an applicant shall be found to lack good moral character if during the statutory period the applicant...(vi) Has given false testimony to obtain any benefit from the Act, it the testimony was made under oath or affirmation and with an intent to obtain an immigration benefit..."

The Service finds that your false testimony, regarding your martial history, fails to demonstrate good moral character, as is required.

**In conclusion, you are ineligible for naturalization in that you have failed to establish that you are a person of good moral character and that you have the requisite continuous lawful permanent residence status in the United States.  Therefore, your application must be and hereby is denied.**



**EXHIBIT F**



U.: partment of Homeland Security
630 Sansome Street, Citizenship Branch
San Francisco, CA 94111



**U.S. Citizenship
and Immigration
Services**

Maya Camara
294 Avalon Drive
Daly City CA 94015

Refer to File Number:
A 44 289 385/N-336

### N-336 HEARING DECISION

On October 20, 2005, your application for naturalization was denied, and you filed timely a Form N-336, Request for Hearing on a Decision [in] Naturalization Proceedings. On December 19, 2005, a Review Hearing was conducted to allow you an opportunity to overcome the reasons for the denial of your application for naturalization.

Your application for naturalization, which was filed under Section 316(a) of the Immigration and Nationality Act (INA), was denied because you immigrated as an unmarried daughter of a United States citizen and were ineligible for such status as you were married, and, therefore, lacked the required five years legal permanent residence in the United States. Your application was also denied because it was determined that you gave false testimony concerning your marital status and therefore failed to demonstrate good moral character.

In your appeal to the decision, you provided the following rebuttal. Your marriage lacked a marriage license and therefore was void *ab initio* under paragraph 3 of Article 35 of the Family Code of the Philippines. You provided a decision of the Regional Trial Court, National Capital Judicial Region, Branch 107, Quezon City, Republic of the Philippines, dated July 28, 2003, and a decree/certificate of finality from the same court dated January 22, 2004, stating that the said marriage was declared void *ab initio* and that your child, Laurenz Anthony Camara Gonzales, was declared illegitimate. You maintained that the marriage was void and invalid; that is, that it was void from its inception rather than being a voidable marriage. Hence, your argument proceeded, because the marriage was declared void *ab initio* in the Philippines, the jurisdiction in which it was celebrated, the marriage cannot be valid for immigration purposes. Further, you contended that your misrepresentation was not material because you were not legally married and therefore not excludable.

The Service has reviewed the facts presented. It has determined that you have not sufficiently overcome in whole or in part the reasons for the denial of your application for naturalization, and your application remains denied.

Specifically, the Service considered the following information in making its determination. It is well established that the validity of a marriage is determined by the law of the place of celebration, in this case, the Philippines. Matter of Gamero, 14 I&N Dec. 674 (BIA 1974). Pursuant to Article 2 of the Family Code of the Philippines (Executive Order 209 dated July 6, 1987), no marriage shall be valid, unless these essential requisites are present:

1. Legal capacity of the contracting parties who must be a male and a female;
2. Consent freely given in the presence of the solemnizing officer.



A 44 829 385/N-336

Further, Article 3 of the Family Code of the Philippines states: "The formal requisites of marriage are:

1. Authority of the solemnizing officer
2. A valid marriage license except in the cases provided for in Chapter 2 of this Title;
3. A marriage ceremony which takes place with the appearance of the contracting parties before the solemnizing officer and their personal declaration that they take each other as husband and wife in the presence of not less than two witnesses of legal age."

Furthermore, Article 4 of the Family Code of the Philippines states: "The absence of any of the essential or formal requisites shall render the marriage void *ab initio* except as stated in Article 35 (2). A defect in any of the essential requisites shall not affect the validity of the marriage, but the party or parties responsible for the irregularity shall be civilly, criminally and administratively liable."

Although you presented a decision and a decree/certificate of finality from the Regional Trial Court, Republic of the Philippines, declaring your marriage void *ab initio*, there is no evidence in the court's decision or in USCIS' record of proceedings to suggest that you or your husband lacked the intent or the capacity to marry. You married in a civil ceremony before a minister who was an authorized solemnizing officer pursuant to Article 7 of the Family Code of the Philippines on November 17, 1991 at the City Hall of Manila. Your parents and your husband's parents gave their consent to the marriage. In the marriage contract, the minister, Rev. Jullie Torres, certified knowing full well that he was civilly, criminally and administratively liable pursuant to Article 4 of the Family Code of the Philippines "that the Marriage License Number 9935890 issued at Carmona, Cavite, Philippines, on November 8, 1991, in favor of said parties (that is, you and your husband) was exhibited to me…" Your family secured all the documents needed and made the arrangements for the wedding. You stated to the Service that your son was born prior to the marriage ceremony on May 10, 1991 and provided a birth certificate verifying that birthdate. However, the court was informed that your son was born on May 10, 1992, subsequent to the marriage ceremony. Thus, the decision stated that your marriage was blessed with a son born May 10, 1992. The Court noted that your husband cried when informed that the marriage license was improperly registered. You advised your husband to initiate proceedings to void your marriage. Your attorney, Mr. Michael Gurfinkel, secured a certification from the Civil Registrar of Carmona, Cavite, Philippines, dated August 2, 2001 that no marriage license was issued to you and your husband but instead was issued in favor of Rolando Sarenas and Cristina Francisco. You and your husband were summoned by the court; both of you failed to file your responsive pleadings. And although you were notified of the proceedings, you failed to appear. Therefore, the Regional Trial Court did not have any knowledge as to the veracity of the evidence being submitted. Because the State had nothing to present to rebut your husband's evidence, the court declared the marriage void *ab initio* and declared your child illegitimate on July 28, 2003. Moreover, the Service noted that you initiated steps to have the marriage declared void *ab initio* only after a previous application for naturalization was denied. That application was also denied because you were married and entered the United States as a child of a U.S. citizen and thus, were ineligible for the visa.

And lastly, while you contended that the license was issued to another couple and therefore, was invalid, it is noted that the Family Code of the Philippines is silent in stating that an improperly registered marriage license gives the parties the right to void *ab initio* or annul an otherwise valid marriage. Article 4 of the Family Code of the Philippines states in pertinent part: "A defect in any of the essential requisites shall not affect the validity of the marriage…"

In Matter of Agustin 17 I &N Dec. 14 (BIA 1979), plaintiff argued that her Philippine marriage was not valid because she did not freely consent, a valid marriage license was not issued, and the marriage was not properly solemnized. The BIA, however, determined that the marriage defects referred to did not appear to be fatal to the validity of the marriage. Id at 15. The BIA also determined that whether the marriage ceremony was voidable is immaterial since a voidable marriage is regarded as valid until annulled or otherwise terminated. Id. At 16. Using the same reasoning, even if the marriage was found to be void *ab initio*, it would only deemed to be void from the date that the Regional Trial Court issued the

2



A 44 829 385/N-336

order nullifying the marriage. Hence, you were a married daughter at the time of entry into the U.S. in 1993 as the decree was not issued until 2003.

Marriages declared void at inception or annulled will not relate back to cure a ground of exclusion...at the time of entry where the alien entered the United States in an immigrant status dependent on his being unmarried. Matter of Astorga 17 I&N Dec. 1 (BIA 1979); Matter of Wong, 16 I&N Dec. 87 (BIA 1977); Matter of R___J___, 7 I&N Dec. 182 (BIA 1956), reaffirmed. See also Hendrix v. INS, 583 F.2d 1102 (9th Cir. 1978). Regardless of the effect of the courts concerning a decree of annulment, for immigration purposes, USCIS is not obliged to give retroactive effect to it so as to cure a violation of law respecting entry into the United States. It is the marital status at the time of entry that should serve as the basis for one alien's preferment over others under the quota system. Hendrix V. INS, 583 F.2e at 1103. When you applied for your immigrant visa, you did not indicate to legacy INS officials that you were married or that you had a child from your marriage. You signed a statement of marriageable age applicant, Form OF-237, prior to your entry into the U.S. You misrepresented both your marital status and that you had a child from the marriage. You continued to misrepresent both during your second application for naturalization (filed December 9, 1998) which was denied. Finally, it was only after the Service denied that naturalization application that you advised your husband to go to the Philippines Regional Trial Court on the counsel of your attorney to secure a nullity of marriage. The evidence described above supports the Service's determination that you lied to obtain an immigration benefit you were not entitled to and would not have obtained had you spoken the truth about your marital status.

Section 336.9(b) of Title 8, Code of Federal Regulations provides for a further review of your qualifications for naturalization under your current application. To request such a review, you must file a petition for review with the United States District Court having jurisdiction of your place of residence, in accordance with Chapter 7, Title 5, United States Code, within not more than 120 days of the date of this decision.


David N. Still
District Director

cc: Michael Gurfinkel

3



CERTIFIED MAIL

7001 0360 0003 6314 1171

U.S. DEPARTMENT OF JUSTICE
IMMIGRATION & NATURALIZATION SERVICE
630 SANSOME STREET
SAN FRANCISCO, CALIFORNIA 94111-2280

OFFICIAL BUSINESS

Law Ofc of Michael Guenfarkel
719 N. Brand Blvd.,
Glendale CA 91203-2609

US OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300

$ 04.64⁰
PITNEY BOWES

02 1A
0004201446    AUG 23  2006
MAILED FROM ZIPCODE 94111

UNITED STATES POSTAGE

RECEIVED
AUG 25 2006
BY:_____

5f203#2605

③I

**EXHIBIT G**



**Library of Congress - Law Library**
James Madison Memorial Bldg., LM 240
Washington, D.C. 20540
Tel. (202) 707-~~7104~~
7104

# FACSIMILE COVER PAGE

Date:                  01/08/2007                    1 of 4 pages

**Please deliver this**                    **TO:**

**Name:**     **Mr. Michael Gerfinkle**

**Location:**    **California**

Tel. No.     1 - 310 - 498 - 3536          Fax No.     1 - 818 - 543 - 5801

**FROM:** Mr. Guerra

Location: Law Library of Congress

Tel. No.: 202-707-7104

**CONCERNING:**

## Article 35, FAMILY CODE OF THE PHILIPPINES

# FAMILY CODE
## OF THE
# PHILIPPINES

By

**JUDGE ED VINCENT S. ALBANO (Ret.)**

Judge, Regional Trial Court, Branch 50, Pampanga;
Dean, College of Law, University of Perpetual Help System, Laguna;
A.B. Political Science, FEU, 1970; Ll.B, Institute of Law, 1974;
Reviewer in Remedial Law, Bar Eastern University,
University of the East, Bar Reviewer in Civil Law,
University of the Phils., Far Eastern University,
San Beda College of Law, University of Santo Tomas,
Manuel L. Quezon University, Lex Reviews and Seminars, Inc,
National Bar Review Center, Arellano University;
Bar Reviewer in Political Law, FEU, UE; Lecturer in Civil Law,
Political Law, Remedial Law,
Legal Ethics, General Law Practice Institutes,
University of the Philippines; Former Holder,
Juan Ponce Enrile and Pedro Concepcion
Professorial Chairs in Civil Law, Institute of Law, FEU;
Member of the Faculty, Philippine Judicial Academy, Supreme Court;
Author of the following books: Civil Law Reviewer;
Civil Law Review Guide; Torts and Damages;
Political Law Reviewer; Remedial Law Reviewer;
Bar Reviewer in Legal Ethics

and

**ED VINCENT A. ALBANO, JR.**

Ll.B., 1999, FEU; Law Practitioner and Professor of Law

**SECOND EDITION**

2 0 0 1

Published & Distributed by

**Rex Book Store**

856 Nicanor Reyes, Sr. St.
Tel. Nos. 736-05-67 • 735-13-64
1977 C.M. Recto Avenue
Tel. Nos. 735-55-27 • 735-55-34
Manila, Philippines

shame and embarrassment concomitant with the scandalous cohabitation of persons outside a valid marriage due to the publication of every applicant's name for a marriage license. The publicity attending the marriage may discourage such persons from legitimizing their status. To preserve peace in the family and avoid the peeping and suspicious eye of public exposure and contain the source of gossip arising from the publication of their names, the law deemed it wise to preserve their privacy and exempt them from that requirement. The five-year common-law cohabitation should be a period of five-year period should be the years immediately before the day of the marriage and it should be a cohabitation characterized by exclusivity — meaning no third party was involved at any time within the five years and continuity — that is unbroken. Otherwise, if that continuous five-year cohabitation is computed without any distinction as to whether the parties were capacitated to marry each other during the entire five years, then the law would be sanctioning immorality and encouraging parties to have common-law relationships and placing them on the same footing with those who lived faithfully with their spouses. (Engrace Niñal vs. Norma Bayadog, *supra*).

---

# Chapter 3

# VOID AND VOIDABLE MARRIAGES

**Article 35.** The following marriages shall be void from the beginning:

(1) Those contracted by any party below eighteen years of age even with the consent of parents or guardians;

(2) Those solemnized by any person not legally authorized to perform marriages unless such marriages were contracted with either or both parties believing in good faith that the solemnizing officer had the legal authority to do so;

(3) Those solemnized without a license, except those covered by the preceding chapter;

(4) Those bigamous or polygamous marriages not falling under Article 41;

(5) Those contracted through mistake of one contracting party as to the identity of the other;

(6) Those subsequent marriages that are void under Article 53.

**NOTES:**

Article 35 enumerates the various instances of a void marriage.

(1) *Below 18 years*

One of the requirements of a valid marriage is legal capacity, that without it, the marriage is void. So that, if the parties or anyone of them is below 18 years, even with the consent of the parents, the marriage is void for lack of legal capacity.



*Example:*

A and B, both 17 years of age and Filipinos met in Hongkong. They got married with the consent of their parents. The marriage is void for lack of legal capacity. Even if Hongkong laws recognize their marriage as valid, the same would still be void in the Philippines because it is Philippine law that determines their legal capacity. (Article 15, New Civil Code). Furthermore, even if valid where celebrated, Articles 26 (paragraph 1) and 35(1) of the Family Code provide that their marriage is void.

(2)   *No authority to solemnize marriages*

For purposes of validity of a marriage, the solemnizing officer must be legally authorized to perform or celebrate marriages. Article 7 of the Family Code provides for those authorized to solemnize marriages. The Local Government Code has restored the power or authority of mayors to solemnize marriages. Without such legal authority, the marriage is void.

But the law gives validity to a marriage even if the person solemnizing the marriage is not legally authorized to do so provided that one or both of the contracting parties believed in good faith that the solemnizing officer had such legal authority.

*Example:*

X and Y wanted to have a rush wedding. They went to the City Hall of Manila and talked to A who brought them to B who was introduced as a minister who can solemnize marriages. B solemnized the marriage of X and Y who, in good faith, believed that he could solemnize it, but in truth and in fact, he is not legally authorized as he is not a minister. This is what is known as a marriage contracted in good faith. It is valid even if there is no actual legal authority of B to solemnize the marriage.

The validity of the marriage mentioned above is in line with the public policy that in case of doubt, the law and the courts lean towards the validity of the matrimony.

But let us say that X knew that B was not legally authorized to solemnize marriages and yet, he agreed to marry Y. Under such a situation, still the marriage is valid because Y

was in good faith. While it appears to be void, such invalidity cannot be invoked by X as against Y because he cannot benefit out of his wrongdoing.

(3)   *No marriage license*

So much discussion has been made on the marriage license as a prerequisite of a valid marriage. Without it, there can be no valid marriage, except those marriages under exceptional circumstances under Articles 27, 28, 31, 32, 33, 34 of the Family Code. In fact a marriage cannot be solemnized now and the license would be produced thereafter. That is void as it was celebrated without a marriage license. Look at the case of Cosca, et al. vs. Palaypayon, Jr., et al., A.M. No. MTJ-92-721, September 30, 1994, 55 SCAD 759, where a judge was fined and reprimanded for having solemnized marriages without licenses at the time of their celebration but the marriage licenses were produced after the marriage were celebrated. The marriages cannot be valid.

(4)   *Mistake in the identity of the party*

If a marriage is contracted through mistake of one of the contracting parties as to the identity of the other, the same is void. The reason is that, it is as if the party who committed that mistake in the identity of the other did not give his/her consent. This marriage used to be only voidable under the Civil Code, but it has been made void by the Family Code.

(5)   *Subsequent marriage under Article 53*

The law makes reference to a situation where there was annulment or a declaration of nullity of marriage. The law requires that these documents, together with the document delivering the presumptive legitime of the compulsory heirs of the parties, be registered in the proper civil registry or registry of property. If they failed to comply with this requirement and one or both of them contracted a subsequent marriage, the same is void. (See Arts. 52 and 53, Family Code). Even if the marriage mentioned above is celebrated abroad and valid there as such, it is void in the Philippines. (Arts. 15, New Civil Code; 26 [par. 1], Family Code).

**Article 86.** A marriage contracted by any party who, at the time of the celebration, was psychologically incapacitated to comply with the essential marital obligations of

