SCOTT N. SCHOOLS (SC 9990)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
MELANIE L. PROCTOR (CSBN 228971)
Melanie.Proctor@usdoj.gov
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6730
    FAX: (415) 436-6927

Attorneys for Respondents

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MAYA CAMARA,<br><br>        Petitioner,<br><br>v.<br><br>MICHAEL CHERTOFF, Secretary, Department of Homeland Security; PETER D. KEISLER,* Attorney General of the United States; EMILIO T. GONZALEZ, Director of United States Citizenship and Immigration Services; and DAVID N. STILL, District Director of United States Citizenship and Immigration Services,<br><br>        Respondents. | No. C 06-7552 EMC<br><br>RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR SUMMARY JUDGMENT; RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>Date: December 19, 2007<br>Time: 10:30 a.m.<br>Court: C, 15th Floor |

## I.  NOTICE OF MOTION

PLEASE TAKE NOTICE THAT on December 19, 2007, at 10:30 a.m., before the Honorable Edward M. Chen, Courtroom C, 450 Golden Gate Avenue, San Francisco, California, 94102, Respondents Michael Chertoff, Secretary of the Department of Homeland Security, et al., by their attorneys, Scott N. Schools, United States Attorney for the Northern District of California, and Melanie L. Proctor, Assistant United States Attorney, will move this Court for an order granting

---

*Pursuant to Fed. R. Civ. P. 25(d)(1), Peter D. Keisler is substituted for his predecessor, Alberto Gonzales, as the United States Attorney General.

RESPONDENTS' OPPOSITION AND CROSS MOTION
C 06-7552 EMC

1  summary judgment to Respondents on Petitioner's Petition for Review of the Denial of Petitioner's
2  Naturalization Application pursuant to Federal Rule of Civil Procedure 56.  Respondents' Motion
3  is based on this notice, the points and authorities in support of this motion, the attached exhibits, and
4  on such oral argument as the Court may permit.

## II.  INTRODUCTION

Petitioner Maya Camara ("Petitioner") asks the Court to grant her application for naturalization. She argues that the U.S. Citizenship and Immigration Services ("USCIS") erred in when it found that she was married at the time of her entry. Contrary to Petitioner's pleadings, it is a well settled principle of immigration law that where treating an annulled marriage as though it never existed would result in rewarding fraud and manipulation of the immigration system, the annulment does not relate back to cure the illegality of the alien's entry. Here, Petitioner was married at the time of her entry into the United States. She provided false testimony in support of her immigration applications. Accordingly, she was never lawfully admitted, and she lacks the requisite good moral character to qualify for naturalization. Her application for naturalization was correctly denied, and Respondents[1] are entitled to summary judgment as a matter of law.

## III.  FACTS

On July 8, 1993, Petitioner Maya Camara ("Petitioner") applied for an immigrant visa, and requested status as the unmarried child of a United States citizen. Exh. 1. On her application, she stated that she intended to immigrate to the United States. Id., p. DHS 135, Box 21. She further stated that she was not married. Id., Box 12. She also claimed that she did not have any children. Id., Box 13. She signed a form indicating that she understood her application was based on her unmarried status, and that if she married prior to her application for admission at a port of entry, she would be excluded from the United States. Id., p. DHS 159. On October 24, 1993, Petitioner received the visa she sought. Exh. 2.

---

[1] Respondent Keisler asserts that he is not properly named. Since March 1, 2003, the Department of Homeland Security and its United States Citizenship and Immigration Services have been responsible for adjudication of naturalization applications. 6 U.S.C. § 271(b). Accordingly, the discretion formerly vested in the Attorney General is now vested in the Secretary of Homeland Security. 6 U.S.C. § 551(d). Respondent Keisler should be dismissed from the Petition.

On September 19, 1996, Petitioner applied for naturalization. Exh. 3. On that application, she stated that she had been married one time, and that she had one child. Id., p. DHS 126, Parts 5 and 6. Notably, she admitted that her child had been born on May 20, 1991. Id. On December 9, 1996, Petitioner withdrew her application for naturalization. Exh. 4.

In 1998, Petitioner again applied for naturalization. Exh. 5. The legacy Immigration and Naturalization Service ("Service")[2] interviewed her on November 16, 1999. Id. At that interview, she claimed to have been married once previously, on April 19, 1995. Id., p. DHS 102. She also stated that she did not include her son on her application for a visa because "at that time" she was not decided or had "no plans" of staying in the United States. Id., pp. DHS 102, 104. The Service requested two copies of the birth and baptismal certificates for all children, and copies of the marriage certificates for all marriages. Id., p. DHS 105. The Service also initiated an investigation. Exh. 6. The investigation revealed a marriage contract between Petitioner and Anthony Dave Tobias Gonzales, dated November 14, 1991. Id., p. DHS 109-11. On January 22, 2001, the Service denied Petitioner's application. Exh. 7. The Service determined that Petitioner had never obtained lawful permanent resident status in the United States because at the time of her entry as an unmarried child, she was, in fact, married. Id., p. DHS 95. In addition, the Service determined that Petitioner had provided false testimony, precluding her from establishing good moral character. Id., p. 96.

On July 28, 2003, a Philippine court declared Petitioner's marriage to Gonzales void ab initio. Petitioner's Motion for Summary Judgment ("Petitioner's Motion"), Exh. D. On September 12, 2003, Petitioner again applied for naturalization. Exh. 8. On her application, she stated that she and her husband had each been married only once. Id., p. DHS 47. On December 20, 2004, the Service interviewed Petitioner under oath. Exh. 9. Petitioner stated that she had been married twice, each time to the same person, but only one marriage had been legal. Id., p. DHS 59. She admitted that she was married at the time of her 1993 entry into the United States, but prevaricated that the marriage had not been legal. Id. She stated that because she had not obtained

---

[2] Because the proceedings at issue include decisions by the legacy INS and its successor agencies within the Department of Homeland Security, for ease of reference, this Motion will refer only to "the Service."

RESPONDENTS' OPPOSITION AND CROSS MOTION
C 06-7552 EMC                                3

1  a marriage license, and that her "attorney [said] that under Philippine law" it was not a valid
2  marriage. Id., p. DHS 60. She also claimed that when she went in for her embassy interview, the
3  officer never asked about her marital status, and she made no statements about it. Id.

4        On October 20, 2005, the district director denied Petitioner's application. Exh. 10. The
5  district director considered the decision of the Philippine court, but noted that a marriage declared
6  void ab initio is only deemed void from the date the court issues the order. Id., p. DHS 41.
7  Accordingly, the district director determined that Petitioner had never been lawfully admitted to the
8  United States, and had provided false testimony. Id. The district director denied her application.
9  Id. Petitioner requested a hearing on the decision, alleging that the Service had erred in not applying
10 the relation back doctrine. Exh. 11. The Service denied her appeal. Exh. 12.

## IV. JURISDICTION AND SCOPE OF REVIEW

12       Under 8 U.S.C. § 1421(c) and 8 C.F.R. § 336.9(b), a person whose application for
13 naturalization is denied after a hearing before an immigration officer may seek review of the denial
14 in the United States District Court for the district in which the person resides. "The review will be
15 de novo, and the court will make its own findings of fact and conclusions of law." 8 C.F.R.
16 § 336.9(c). "A judicial determination of whether a finding of fact is supported by substantial
17 evidence presents only an issue of law. It is therefore subject to disposition by summary judgment."
18 McCall v. Andrus, 628 F.2d 1185, 1189-90 (9th Cir. 1980). "'Substantial evidence' means more
19 than a mere scintilla but less than a preponderance; it means such relevant evidence that a reasonable
20 mind might accept as adequate to support a conclusion." Baria v. Reno, 94 F.3d 1335, 1340 (9th
21 Cir. 1996).

22       The Court's review is governed by the Administrative Procedure Act. See 8 U.S.C.
23 § 1421(c) (stating the hearing shall be "in accordance with chapter 7 of Title 5."). Accordingly, the
24 Court is confined to the administrative record, or those parts of it cited by the parties. 5 U.S.C.
25 § 706. Documents not submitted to the agency should not be considered.[3] See, e.g., Etape v.
26 Chertoff, – F.3d –, 2007 WL 2200286, at *12 (4th Cir. Aug. 2, 2007) (if application is denied,

---

28    [3]Respondents note that Petitioner's Exhibits A, B, and G are either not contained in or are not the same documents as those in the administrative record, and should be stricken.

applicant may receive "de novo review before the district court on a fully developed administrative record.").

## V. ANALYSIS

### A. PETITIONER LACKS GOOD MORAL CHARACTER

An applicant for naturalization must be a person of good moral character. 8 U.S.C. § 1427(a). By statute, any person who provides false testimony for the purpose of obtaining immigration benefits shall not be regarded as a person of good moral character. 8 U.S.C. § 1101(f)(6); United States v. Dang, 488 F.3d 1135, 1141 n.3 (9th Cir. 2007). Petitioner addresses this essential issue in approximately a dozen lines, and offers only the interesting argument that she did not "misrepresent" her status because her marriage was not legally valid at the time of her entry. Petitioner's Motion, p. 18. However, as discussed below, Petitioner's marriage was valid under the law of the Philippines. Moreover, nowhere in Petitioner's pleadings or testimony does she state that at the time she entered the United States, she believed her marriage to be invalid. Rather, the evidence shows that at the time she entered, she believed that she was married and that she knew it was contrary to the conditions on her visa. Exh. 9, p. DHS 60.

In support of her argument, Petitioner offers a decision of the Attorney General dating to 1961. See Petitioner's Motion, p. 18. However, that opinion defines a "material misrepresentation" as a ground of excludability or deportability, and is not applicable to the case at hand. Matter of S– and B-C-, 9 I&N Dec. 436 (A.G. 1961). In 1988, the United States Supreme Court directly addressed the issue of false testimony in the immigration context, and held that

> on its face, § 1101(f)(6) does not distinguish between material and immaterial representations. Literally read, it denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits. We think it means precisely what it says.

Kungys v. United States, 485 U.S. 759, 778 (1988) (emphasis added). Accordingly, Petitioner's argument that her "misrepresentation" was not material fails because it is irrelevant whether her lies were material. Rather, all that matters is whether she lied under oath.

For the testimony to preclude a finding of good moral character, "the testimony must have been made orally and under oath, and the witness must have had a subjective intent to deceive for

the purpose of obtaining immigration benefits." Ramos v. INS, 246 F.3d 1264, 1266 (9th Cir. 2001). Thus, although Petitioner has demonstrated a proclivity for dissembling the truth on her applications for immigration benefits,[4] only her statements made orally and under oath at her interviews are considered in this context. Hence, when Petitioner testified that she had not married prior to her immigration to the United States, that she was single at the time of her immigration, that she had never filed any type of marriage certificate prior to October 24, 1993, and that she has never had any type of secret marriage, she provided false testimony precluding her from a finding that she possesses good moral character. See Exh. 5, p. DHS 102.

Petitioner signed a document acknowledging that if she married before her application for admission into the United States, she would be excluded from the United States. Exh. 1, p. DHS 159. On November 16, 1999, when Petitioner was asked whether she had ever filed any type of marriage certificate in the Philippines prior to her entry into the United States, she offered an unqualified "no." Id. That statement is contradicted by the evidence and her own later statement that she had, in fact, filed a marriage certificate. Exhs. 6, p. DHS 111; 9, p. DHS 59. Petitioner's ever-evolving explanations for her lies cannot change the fact that Petitioner has clearly provided false testimony within the meaning of 8 U.S.C. § 1101(f)(6) and under the definition set forth by the United States Supreme Court. Kungys, 485 U.S. at 778. As such, Petitioner is ineligible for naturalization, and the Court need not reach the issue of whether her marriage was valid under the laws of the Philippines.

    B.    <u>PETITIONER WAS MARRIED AT THE TIME OF HER ENTRY</u>

        1.    <u>Petitioner's Marriage Was Valid</u>

Petitioner contends that because a marriage license with the same number as hers was issued to another couple, her 1991 marriage was invalid. Petitioner's Motion, p. 3. She relies on Article

---

[4] Compare Exh. 1 (denying that she was married or had children, and stating that she intended to stay permanently in the United States) with Exh. 3 (admitting to one marriage and one child) and Exh. 5, p. DHS 104 (stating that she was married one time, in 1995, and that when she applied to immigrate to the United States, she did not intend to stay permanently) and Exh. 9, p. DHS 59 (stating that she had been married twice to the same man, in 1991 and 1995, and stating that she had filed a marriage certificate in the Philippines prior to October 24, 1993).

35 of the Philippine Family Code ("P.F.C."). Id., pp. 4, 5, 9, 8, 12, 17, 19. Petitioner selectively reads the law of the Philippines.

Article 3 sets forth the formal requirements of marriage: (1) the authority of the solemnizing office, (2) a valid marriage license with certain exceptions, and (3) a marriage ceremony which takes place with the appearance of the contracting parties before the solemnizing officer and their personal declaration that they take each other as husband and wife in the presence of two witnesses of legal age. Exec. Order No. 209, 1 P.F.C. Art. 3.[5]  In turning directly to Article 35, Petitioner fails to address Article 4, which explicitly provides that "[a]n irregularity in the formal requisites shall not affect the validity of the marriage." Exec. Order No. 209, 1 P.F.C. Art. 4.

Petitioner's wedding ceremony was conducted on November 14, 1991, at the Manila City Hall. Exh. 6, DHS 111. Petitioner and her husband presented their officiant with a marriage license. Id. The Article on which Petitioner relies refers to marriages that were solemnized without a license at all. See Exec. Order No. 209, 3 P.F.C. 35(3) (declaring marriages "solemnized without license" to be void from the beginning). Here, Petitioner's marriage was solemnized with a license. Exh. 6, DHS 111. While there may have been an irregularity with that license, the wedding ceremony was not performed without a license. Accordingly, Article 35 is inapplicable. Petitioner's marriage was valid at the time of her entry into the United States. Exec. Order No. 209, 1 P.F.C. Art. 4.

Petitioner's reliance on Matter of Dela Cruz, 14 I&N Dec. 686 (BIA 1974) is misplaced. Petitioner's Motion, p. 10. There, the Board of Immigration Appeals ("BIA") determined that because the marriage at issue was prohibited in the first instance by the law of the Philippines, the marriage was not valid. Dela Cruz, 14 I&N Dec. at 687. The marriage at issue was between first cousins, which was flatly prohibited by law. Id. at 686-87. Here, as discussed above, Petitioner's marriage was not prohibited by law. Rather, it contained an irregularity, and was valid under the law of the Philippines. Exec. Order No. 209, 1 P.F.C. Art. 4.

---

[5] The Family Code of the Philippines may be viewed on the government of the Philippines' website, at http://www.gov.ph/faqs/familycode.asp (last visited October 25, 2007). The Family Code was enacted prior to Petitioner's 1991 marriage. Exec. Order No. 209, 12 P.F.C. Art. 257.

RESPONDENTS' OPPOSITION AND CROSS MOTION
C 06-7552 EMC                                    7

1     Similarly, Petitioner mistakenly relies on <u>Mayo v. Schiltgen</u>, 921 F.2d 177 (8th Cir. 1990). There, the alien was under an order of deportation for lack of a proper immigrant visa. <u>Id.</u> at 180. On appeal to the BIA, she raised for the first time evidence that her marriage license was not issued until after her marriage. <u>Id.</u> Here, Petitioner does not argue that she did not have a marriage license; rather, she attacks the validity of the marriage license that was issued. Petitioner's Motion, p. 3. Under Article 4, Petitioner's marriage was valid. Exec. Order No. 209, 1 P.F.C. Art. 4.

    Petitioner's attempt to distinguish <u>Matter of Agustin</u>, 17 I&N Dec. 14 (BIA 1979) fails. She argues that unlike the petitioner in that case, she "presented substantial and persuasive (if not conclusive) evidence, showing that she did not have a valid marriage license." Petitioner's Motion, p. 12. To the contrary, what Petitioner presented was evidence that revealed the irregularity within the formal requisites of her marriage, but not the absence of a marriage license. Exh. 12, p. DHS 4. Nowhere does Petitioner declare that she is not the person who signed the marriage contract dated November 14, 1991. Here, as in <u>Agustin</u>, the evidence does not support a finding that her marriage was invalid at the time of her entry. <u>Agustin</u>, 17 I&N Dec. at 17.

    Furthermore, as in <u>Matter of Wong</u>, 16 I&N Dec. 87 (BIA 1977), Petitioner signed a notice from the Department of State which informed her that she would lose her preference status if she married prior to her application for admission at a port of entry. Exh. 1, p. DHS 159; <u>Wong</u>, 16 I&N Dec. at 88. Thus, Petitioner was on notice prior to the date she entered the United States of the severe consequences if she were married at the time of her entry. <u>Wong</u>, 16 I&N Dec. at 88. Because Petitioner was married at the time of her entry as an unmarried person, she has never obtained lawful status, and she is not eligible for United States citizenship.

    2.    <u>The Relation Back Doctrine Does Not Apply</u>

    Petitioner alternatively argues that the 2003 order declaring her 1991 marriage void <u>ab initio</u> has cured the defect in her entry to the United States. Petitioner's Motion, p. 16. She suggests that the relation back doctrine, as applied in this context, would treat her marriage as though it never existed. <u>Matter of Magana</u>, 17 I&N Dec. 111, 113 (BIA 1979). However, as she admits, "where the government determines that a person received immigration benefits by concealing a disqualifying marriage, it will not allow that person to benefit from" its application. Petition, pp.

16-17; see also Hendrix v. INS, 583 F.2d 1102, 1103 (9th Cir. 1978) (holding that annulment of petitioner's marriage did not relate back to cure the fact she had been married at the time she entered the United States); Magana, 17 I&N Dec. at 114 (finding that where the alien entered on the basis of his marriage to a United States citizen, but at the time of his entry, had also been married to another woman, the relation back doctrine did not apply).

In Matter of Astorga, 17 I&N Dec. 1 (BIA 1979), the BIA applied the relation back doctrine where the alien "did not receive any immigration benefits through his purported first marriage." Id. at 5. Here, Petitioner received an immigration benefit by concealing her 1991 marriage because her entry was dependent upon her status as an unmarried person. Exh. 2. Furthermore, the record reveals that the only purpose in seeking an annulment was to manipulate immigration law. Not only did Petitioner remarry her husband, Exh. 9, p. DHS 59, but she sought the annulment only after realizing that her marriage barred her from citizenship. Petitioner's Motion, Exh. D, p. 16.

Hendrix is directly on point, notwithstanding Petitioner's attempt to distinguish this controlling Ninth Circuit case. Petitioner's Motion, p. 14. Petitioner mischaracterizes the arguments presented in Hendrix. Id. In fact, the argument Petitioner attempts to use to as a distinction was a secondary argument rejected by the appellate court. See Hendrix, 583 F.2d at 1104 ("Petitioner also contends . . . ").

In Hendrix, the alien primarily argued that "in light of [her] annulment, she was not a married person at the time of her entry and was properly admitted under her visa." Hendrix, 583 F.2d at 1103. The Ninth Circuit agreed with the Board of Immigration Appeals' holding that "'we are not obliged to give retroactive effect to annulments so as to cure a violation of law respecting entry into the United States.'" Id. Because Petitioner clearly sought the annulment for the sole purpose of attempting to cure her unlawful entry into the United States, the relation back doctrine does not apply. Petitioner was married at the time of her entry to the United States; accordingly, she never obtained lawful status, and is ineligible for citizenship. Hendrix, 583 F.2d at 1103.

///

///

///

### VI.  CONCLUSION

For the foregoing reasons, Respondents respectfully request the Court to deny Petitioner's Motion for Summary Judgment, and grant Respondents' Motion for Summary Judgment as a matter of law.

Dated: November 5, 2007                                        Respectfully submitted,

SCOTT N. SCHOOLS
United States Attorney


_____/s/_____
MELANIE L. PROCTOR
Assistant U.S. Attorney