LAW OFFICES OF MICHAEL J. GURFINKEL
Michael J. Gurfinkel, Esq. (SBN 93944)
Camille O. Bowman, Esq. (SBN 211458)
219 North Brand Boulevard
Glendale, CA 91203
Tel.: (818) 543-5800
Fax: (818) 543-5801
Email: michael@gurfinkel.com

Attorneys for Petitioner

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAYA C. CAMARA,<br><br>       Petitioner,<br><br>       v.<br><br>MICHAEL CHERTOFF, Secretary of Department of Homeland Security; ALBERTO R. GONZALES, United States Attorney General; EMILIO T. GONZALEZ, Director of United States Citizenship and Immigration Services; and DAVID N. STILL, District Director of United States Citizenship and Immigration Services San Francisco District,<br><br>       Respondents.<br>_____ | Case No.:  C  06-7552 EMC<br><br> Alien No.: A044-289-385<br><br>**PETITIONER'S REPLY BRIEF IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: December 19, 2007<br>Time:          10:30 a.m.<br>Courtroom:    C, 15th Floor |

# I.
## STATEMENT OF THE ISSUES

Petitioner (hereinafter "Ms. Camara"), through counsel, contends that Respondents' opposition fails to overcome the issues raised in Ms. Camara's motion for summary judgment. [1] Therefore, the decision of the USCIS should be overturned and Ms. Camara should be granted naturalization.

The following issue is presented for review:

1.   WHETHER MS. CAMARA'S MARRIAGE WAS VOID *AB INITIO* UNDER PHILIPPINE LAW, SUCH THAT SHE WAS "SINGLE" AT THE TIME OF HER ENTRY INTO THE UNITED STATES

# II.
## ARGUMENT

A.   BECAUSE MS. CAMARA DID NOT HAVE A VALID MARRIAGE LICENSE, HER MARRIAGE WAS NEVER VALID UNDER PHILIPPINE LAW.

Respondents' opposition and argument contain a fundamental flaw, in that Respondents confuse a marriage **contract** with a marriage **license**, and interchange the two, as though they were one and the same. They are not. While the absence of a marriage <u>contract</u> will not affect the validity of a marriage, the absence of a marriage <u>license</u> makes that marriage void *ab initio*. (*See* Articles 2, 3, and 4 of the Philippine Family Code. Art. 4 provides that "the <u>absence</u> of any of the essential or formal requisites shall render the marriage void *ab initio* …"). [2] A marriage license <u>is</u>

---

[1]   Respondents' "Opposition to Petitioner's Motion for Summary Judgment; Respondent's Cross-Motion for Summary Judgment" filed on November 5, 2007 is referred to in this reply as "Respondents' Opposition."

[2]   Article 2 of the Philippine Family Code provides:
   *"Art. 2. No marriage shall be valid, unless these essential requisites are present:*
   *(1)  Legal capacity of the contracting parties who must be a male and a female; and*
   *(2)  Consent freely given in the presence of the solemnizing officer."*
(Footnote continued on following page)

PETITIONER'S REPLY BRIEF IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

1    a formal requisite of the marriage.  In this case, there was an absence, not an irregularity, of a

2    marriage license.

3            In their opposition, Respondents offer Exhibit 6, DHS 111 as "proof" that there somehow

4    was a marriage license. (*See* Respondents' Opposition at pg. 7, lines 14-15). However, that

5    document is a marriage contract, not a marriage license. The marriage contract must not be

6

7    confused with the marriage license, the latter being a formal requisite for marriage.

8            While the marriage contract (Exhibit 6, DHS 111) references a marriage license (No.

9    9935890), no such marriage license was ever issued to Ms. Camara. The marriage license was

10

11

12

13

14

15
_____

16    Article 3 of the Philippine Family Code provides:
        " *Art. 3. The formal requisites of a marriage are:*
17          *(1) Authority of the solemnizing officer;*
            *(2) A **valid marriage license** except in cases provided for in Chapter 2 of this Title; and*
18          *(3) A marriage ceremony which takes place with the appearance of the contracting*
19             *parties before the solemnizing officer and their personal declaration that they take*
               *each other as husband and wife in the presence of not less than two witnesses of*
20             *legal age.*" (Emphasis added).

21    Article 4 of the Philippine Family Code provides:
22        "*Art. 4. The **absence of any of the essential or formal requisites** shall render the*
          *marriage void ab initio, except as stated in Article 35(2).*
23
          *A  defect in any of the essential requisites shall render the marriage voidable as provided*
24        *in Article 45.*
25
          *An irregularity on the formal requisites shall not affect the validity of the marriage but*
26        *the party or parties responsible for the irregularity shall be civilly, criminally and*
27        *administratively liable.*" (Emphasis added).

28
PETITIONER'S REPLY BRIEF IN SUPPORT OF PETITIONER'S MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO RESPONDENTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

issued to an entirely different couple, such that Ms. Camara's marriage was performed <u>without a formal requisite</u>, and was therefore void *ab initio*. [3]

_____

[3]     In footnote 3 at pg. 4 of Respondents' Opposition, Respondents state, "Respondents note that Petitioner's Exhibits A, B, and G are either not contained in or are not the same documents as those in the administrative record, and should be stricken."

However, in the *"Updated Joint Case Management Statement"- Document 19 at pg. 2, No. 7. Disclosures, the parties specifically stated: "The parties believe that this Court's review will be confined to the administrative record, the exhibits attached to the petition, and reference material from the Library of Congress, and, accordingly, that the initial disclosure requirements of Fed.R.Civ.P. 26 do not apply."*

<u>Exhibit A</u> to Petitioner's Motion for Summary Judgment is an authenticated copy of Ms. Camara's 1991 marriage contract. A copy of the marriage contract is also found at DHS 111, and Exhibit A of Petitioner's initial Petition for Review pleading.

<u>Exhibit B</u> to Petitioner's Motion for Summary Judgment is certification regarding Marriage License No. 9935890 (the marriage license number is referenced in Ms. Camara's 1991 marriage contract) from the Office of the Municipal Civil Registrar of Carmona, Cavite, Philippines. Exhibit B to Petitioner's Motion for Summary Judgment is a <u>clearer copy</u> of Exhibit B of Petitioner's initial Petition for Review pleading. Additionally, at DHS 28-29, the decision of Presiding Judge Rosalina L. Pison makes reference to the certification of Marriage License No. 9935890:

*"...certification dated August 2, 2001 from Ms. Leodivinia C. Encarnacion, Civil Registrar of Carmona, Cavite. They discovered that Marriage License No. 9935890 purportedly issued to them for their wedding was issued in favor of Mr. Rolando Sarenas and Miss Cristina Francisco on November 6, 1991 and that no marriage license was issued to Mr. Anthony Dave T. Gonzales and Miss Maya Camara on November 8, 1991 (Exhibit "B"). The certified true copy of the Logbook of Marriage License of the Municipal Civil Registrar of Carmona, Cavite also showed that the entry No. 2040 dated November 6, 1991 to the effect that the said marriage license was indeed issued in favor of Rolando Sarenas and Cristina Francisco (Exhibit "C").*

<u>Exhibit G</u> is a copy of reference material provided by the Library of Congress regarding Article 35 of the Family Code of the Philippines.

Therefore, these exhibits are properly before the Court and may be considered.

PETITIONER'S REPLY BRIEF IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

Respondents contend, "while there may have been an irregularity with that license, the wedding ceremony was not performed without a license." (Respondents' Opposition at pg. 7, lines 15-16). That contention is inaccurate, and is not supported by the evidence.  Contrary to Respondents' contention, this is not a case of a "defect" or "irregularity" concerning a marriage license. This case involves the complete absence of any marriage license issued to Ms. Camara, as confirmed by the exhibits/evidence submitted in this case, as well as the Local Civil Registrar and the Philippine Court which granted the annulment.

The fact that marriage license No. 9935890 was issued to someone other than Ms. Camara cannot be considered a mere "irregularity."  It is an absence of a formal requisite.  In fact, the Philippine Court decree (DHS 30) specifically found Ms. Camara's marriage "was celebrated without a valid marriage license and therefore void *ab initio*."

Additionally, as noted in the research provided by the Library of Congress concerning Philippine law (Exhibit G at pg. 36 to Petitioner's Memorandum of Points and Authorities in Support of Motion for Summary Judgment), "so much discussion has been made on the marriage license as a prerequisite of a valid marriage.  Without it, there can be no valid marriage. . . In fact, a marriage cannot be solemnized now and license would be produced thereafter." Accordingly, under the laws of the Philippines (where Ms. Camara's marriage was celebrated), a marriage performed without a license is void *ab initio*, and cannot be valid for any purpose.

Respondents concede that a marriage between first cousins is never valid, but instead is "flatly prohibited by law." (Respondents' Opposition at pg. 7, lines 22-23). It would appear that Respondents would agree (or admit) that if Ms. Camara's husband was her first cousin, then their marriage would be void *ab initio*, and not even Respondents would recognize the validity of that

PETITIONER'S REPLY BRIEF IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

marriage for any purpose. Therefore, had Ms. Camara married her first cousin, she would have lawfully immigrated as "single."

However, under Philippine law, a marriage celebrated <u>without a license</u> and/or an <u>incestuous marriage</u> are both "void from the beginning." (*See* Articles 35(3) and 38(1) of the Philippine Family Code). [4]   Therefore, marriages between first cousins and marriages performed without a marriage license are on <u>equal footing</u>: both are void *ab initio*, and not valid for any purpose.

B.     MS. CAMARA DOES NOT LACK GOOD MORAL CHARACTER.

Respondents claim that Ms. Camara provided false testimony, precluding her from a finding that she possesses good moral character. (Respondents' Opposition at pg.6, lines 4-8). Respondents also make an interesting and curious argument that because petitioner provided false testimony, she "is ineligible for naturalization, and the Court need not reach the issue of whether her marriage was valid under the laws of the Philippines." (Respondents' Opposition at pg. 6, lines 17-19.) That argument or reasoning puts the cart before the horse.

---

[4]   Article 35(3) provides:

"*Art. 35. The following marriages shall be <u>void from the beginning</u>:*
(3) *Those solemnized <u>without a license</u>, except those covered by the preceding Chapter;)*" (Emphasis added).

Article 38(1) provides:

"*Art. 38. The following marriages shall be <u>void from the beginning</u> for reasons of public policy:*
(1) *Between collateral blood relatives, whether legitimate or illegitimate, up to the fourth degree;*" (Emphasis added).

PETITIONER'S REPLY BRIEF IN SUPPORT OF PETITIONER'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO RESPONDENTS' CROSS-MOTION FOR SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

The purported "false testimony" relates to her marital status. If her marriage <u>was</u> void *ab initio* under Philippine law, then she was legally "unmarried." Therefore, statements relating to her marital status cannot be considered "false testimony" if the statements are true. Consequently, since Ms. Camara's marriage was void, she was unmarried, and is eligible for naturalization. [5]

Respondents further state: "nowhere in Petitioner's pleadings or testimony does she state that at the time she entered the United States, she <u>believed</u> her marriage to be invalid. Rather, the evidence shows that at the time she entered, she believed that she was married and that she knew it was contrary to the conditions of her visa." (Opposition at pg. 5, lines 12-15). However, Respondent's "<u>belief</u>" is not relevant. The issue is not what Respondent <u>believed</u>, but rather the issue is whether or not she was <u>legally single</u> at the time of her entry. (For example, a person who marries her first cousin may "believe" she is married, but her "belief" cannot overcome the law, nor make that marriage valid.) Since Ms. Camara's marriage was not valid (or was void) under Philippine law, she was <u>lawfully single</u> at the time of entry. Therefore, it follows that if the truth of the matter is that Ms. Camara was single at the time of entry, then her assertions of being single cannot be considered "false testimony."

C.    <u>HENDRIX VS. INS</u> IS DISTINGUISHABLE (OR CONSISTENT) WITH THIS CASE.

Respondents rely on <u>Hendrix vs. INS</u>, 583 F.2d 1102 (9th Cir. 1978) for the proposition that this court should recognize Ms. Camara's void *ab initio* marriage as "valid." However,

---

[5]    Respondents attempt to cloud the issue of false testimony by referring to various applications for immigration benefits, but finally concede that, "only her statements made orally under oath at her interview are considered in this context." (Respondents' Opposition at pg. 6, lines 3-4). Therefore, statements cited by Respondents in the various applications are <u>not relevant</u> to this issue and should be stricken.

PETITIONER'S REPLY BRIEF IN SUPPORT OF PETITIONER'S MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO RESPONDENTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

<u>Hendrix</u> is distinguishable from (or is even consistent with) Ms. Camara's situation. <u>Hendrix</u> involved a marriage that was annulled because the petitioner claimed, "that her consent was obtained by force." Similarly, in <u>Matter of Magana</u>, 17 I&N Dec. 111 (BIA 1979), the marriage was annulled because the petitioner claimed that "he was intoxicated at that the time of this marriage, and that the marriage was never consummated."

Both <u>Hendrix</u> and <u>Magana</u> dealt with <u>voidable</u> marriages (which are valid, unless one party seeks annulment) and the annulments were based on the <u>subjective intent or state of mind</u> of the petitioners. Certainly, in such situations, it is possible that laws could be "manipulated" by a person who fabricates grounds for annulment (such as force or intoxication), when in fact the person may have been sober and/or still madly in love with his or her spouse. Such subjective grounds could not be easily verified or refuted, hence the <u>Hendrix</u> court's concerns regarding manipulation are valid.

However, when it comes to <u>void marriages</u>, no amount of subjective intent or manipulation can affect the validity or invalidity of the marriage. No amount of manipulation can render a marriage between first cousins as "valid." Such a marriage is objectively void, just as the Philippine Family Code specifically states that the <u>absence</u> of a marriage license makes that marriage void from the beginning.

Since there can be no "manipulation" of immigration law (as there could be in the situations involving <u>Hendrix</u> and <u>Magana</u>), the relation-back doctrine can and should apply, since to hold otherwise would negate the Philippine Family Code, judicial decrees, and effectively result in a void *ab initio* marriage being valid.

PETITIONER'S REPLY BRIEF IN SUPPORT OF PETITIONER'S MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO RESPONDENTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

1
2

### III.
### CONCLUSION

3
4
5
6
7
8

Ms. Camara's marriage was clearly celebrated without a license.  Under Philippine law, the <u>absence</u> of a marriage license renders the marriage void *ab initio*, regardless of a person's subjective "belief" or "intent."  Such a marriage is <u>objectively void</u>, and no amount of subjective belief, intent, or "manipulation" can transform a void *ab initio* marriage into one that is lawful and valid.

9
10
11

Not only does the Philippine Family Code establish that Ms. Camara's marriage was void *ab initio*, but also a Philippine court, in Ms. Camara's specific case, found that her marriage was void *ab initio*.

12
13
14
15
16
17

In order for Respondents to prevail, it will require this Court to ignore and disregard the Philippine law and judicial decrees, and declare a void *ab initio* marriage as being "valid." Respondents should not have the power, right, or jurisdiction to override, overrule, or negate statutes or judicial decrees and somehow declare void *ab initio* marriages to be valid (whether it is a marriage between first cousins or one celebrated without a marriage license).

18
19
20
21
22
23
24
25
26
27

*//*
*//*
*//*
*//*
*//*
*//*
*//*
*//*

28

PETITIONER'S REPLY BRIEF IN SUPPORT OF PETITIONER'S MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO RESPONDENTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    For the reasons previously set forth in this Reply and Petitioner's Memorandum of Points and Authorities in Support of Motion for Summary Judgment, Petitioner respectfully requests this Court to deny Respondents' Motion for Summary Judgment and grant Petitioner's Motion for Summary Judgment.


                                          Respectfully submitted,




DATED:  November 19, 2007                 Law Offices of Michael J. Gurfinkel



                                          _____/S/_____
                                          Michael J. Gurfinkel, Esq.
                                          219 North Brand Boulevard
                                          Glendale, CA 91203-2609
                                          (Michael@gurfinkel.com)


PETITIONER'S REPLY BRIEF IN SUPPORT OF PETITIONER'S MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO RESPONDENTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
CASE NO. C 06-7552 EMC