SCOTT N. SCHOOLS (SC 9990)
United States Attorney
JOANN M. SWANSON (CSBN 88143)
Chief, Civil Division
MELANIE L. PROCTOR (CSBN 228971)
Melanie.Proctor@usdoj.gov
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6730
    FAX: (415) 436-6927

Attorneys for Respondents

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MAYA CAMARA,<br>                Petitioner,<br>v.<br>MICHAEL CHERTOFF, Secretary, Department of Homeland Security; MICHAEL B. MUKASEY,* Attorney General of the United States; EMILIO T. GONZALEZ, Director of United States Citizenship and Immigration Services; and DAVID N. STILL, District Director of United States Citizenship and Immigration Services,<br>                Respondents. | No. C 06-7552 EMC<br><br>RESPONDENTS' REPLY<br><br>Date:  December 19, 2007<br>Time:  10:30 a.m.<br>Court: C, 15th Floor |

## I.   INTRODUCTION

In opposition to Respondents' Motion for Summary Judgment, Petitioner argues that she was single at the time of her entry into the United States because her marriage was not valid. She reasons that thus, her entry into the United States was lawful. She argues that even if she was married, the annulment by the Philippine court cures the defect in her entry. Finally, Petitioner

---

*Pursuant to Fed. R. Civ. P. 25(d)(1), Michael B. Mukasey is substituted for his predecessor, Alberto Gonzales, as the United States Attorney General.

RESPONDENTS' REPLY
C 06-7552 EMC

contends that she does not lack good moral character because she could not lie about that which allegedly was not legally true. Petitioner is wrong on all counts. As Respondents argued in their Motion for Summary Judgment, Petitioner's false testimony precludes her from a finding of good moral character. Moreover, her 1991 marriage was valid under Philippine law, and the Philippine court's decree does not relate back to her entry into the United States. Accordingly, Petitioner is not eligible for naturalization.

## II.   ANALYSIS

### A.   <u>PETITIONER LACKS GOOD MORAL CHARACTER</u>

Petitioner claims that because she was "legally single at the time of her entry," she has not offered false testimony. Petitioner's Reply, p. 7. Her argument ignores her pervasive falsehoods that go beyond the question of whether her marriage in 1991 was legally cognizable under Philippine law. Even if the Court were to accept her theory that she could not lie about something she believed to be true if under her legal interpretation it was not true, on November 16, 1999, when Petitioner was asked whether she had ever filed <u>any type</u> of marriage certificate in the Philippines prior to her entry into the United States, she offered an unqualified "no." Exh. 5, p. DHS 102.

That statement is contradicted by the evidence and her own later statement that she had, in fact, filed a marriage certificate. Exh. 6, p. DHS 111; Exh. 9, p. DHS 59. Her answer to that question did not rely on the legal status of her 1991 marriage, and under Supreme Court precedent, that answer alone is sufficient to disqualify her from naturalization. <u>Kungys v. United States</u>, 485 U.S. 759, 778 (1988) (holding that even "the most immaterial of lies" constitutes false testimony). Moreover, the Ferris wheel of legal reasoning set forth in Petitioner's Motion and Opposition cannot explain the discrepancies between Petitioner's answers on November 16, 1999 and December 20, 2006. Exh. 5, p. DHS 102; Exh. 9, p. DHS 59.

The fact remains that by the time Petitioner entered the United States, she had already participated in a marriage ceremony. Exh.6, p. DHS 111. Petitioner and her husband obtained the consent of their parents, presented their officiant with a marriage license, and participated in a wedding ceremony. Exh. 12, p. DHS 4. Although she has had nearly a decade to do so, Petitioner has utterly failed to offer any plausible explanation for her pretense that she was single at the time

of her entry into the United States.

B. <u>PETITIONER FRAUDULENTLY ENTERED THE UNITED STATES</u>

Petitioner argues that Respondents have somehow confused her marriage contract with a marriage license. Petitioner's Reply at 1-4. However, Petitioner asks the Court to ignore the reference in the marriage contract to a license. Exh. 6, p. DHS 111.[1] She inexplicably contends that because a marriage license with the same number was issued to another couple, her marriage license simply could not exist. Petitioner's Reply, p. 3. Indeed, she persists on quoting the Philippine Court's decree stating that her marriage was conducted "without a valid marriage license" as proof that her marriage was not valid. <u>Id.</u> at 5.

The language of the decree actually supports Respondents' arguments. The decree describes Petitioner's marriage as conducted without a <u>valid</u> license; it does not state that it was conducted without a license at all:

> Evaluating the evidence presented, this Court finds that the petitioner sufficiently established that Marriage License No. 9935890 purportedly issued to him and the respondent on November 8, 1991 <u>which was used as the basis for their wedding</u> on November 14, 1991 at the City Hall of Manila, was in fact issued to Mr. Rolando Sarenas and Miss Cristina Francisco on November 6, 1991. . . . This being so, their marriage was celebrated without a <u>valid</u> marriage license and therefore void ab initio.

Petitioner's Motion, Exh. D, p. 20 (emphasis added). Thus, Petitioner's November 1991 marriage was not entered into without a license, but rather, without a <u>valid</u> license. Exh. 6, p. DHS 111;

---

[1] Petitioner contends that the Exhibit A she offered in support of her Motion was attached to her Petition. However, a review of those documents clearly reveals that they are not the same: the document attached as Exhibit A to her Petition is identical to Respondents' Exhibit 6 p. DHS 111, whereas the document attached as Exhibit A to Petitioner's Motion contains additional pages, as well as remarks typed on the left hand side of the marriage contract. Accordingly, the Exhibit A attached to Petitioner's Motion is not part of the administrative record, nor was it attached to the Petition. It clearly is not reference material from the Library of Congress. As such, it should be stricken from the record.

Petitioner argues that the parties' statement in the Case Management Statement that they <u>believed</u> the Court's review would be confined to the administrative record, exhibits attached to the petition, and reference material from the Library of Congress exempts her exhibits from the Administrative Procedure Act. Petitioner's Motion, p. 4 n.3. A statement in a Case Management Statement cannot usurp the will of Congress. 8 U.S.C. § 1421(c); 5 U.S.C. § 706. Accordingly, only those documents contained in the administrative record are properly before the Court.

RESPONDENTS' REPLY
C 06-7552 EMC                          3

1 Petitioner's Motion, Exh. D, p. 20. Under Philippine law, an irregularity in a formal requisite of
2 marriage does not invalidate the marriage. Exec. Order No. 209, 1 P.F.C. Art. 4. Moreover, a defect
3 renders the marriage voidable; but that is not to say that the marriage never took place. Id. Here,
4 there may have been such a defect or irregularity, but the marriage itself still occurred. Indeed, if
5 Article 35(3) applied to her marriage, the Philippine court would not have had to issue a decision
6 declaring her marriage void ab initio. See Exec. Order No. 209, 1 P.F.C. Art. 35(3) ("The following
7 marriages shall be void from the beginning . . . (3) Those solemnized without license . . . .").

8 Furthermore, as discussed by the District Director, the record is clear that Petitioner intended
9 to be married in November 1991. Exh. 12, p. DHS 4. She and her husband obtained the consent of
10 their parents, and presented the necessary documents to the minister. Id. As such, Petitioner was
11 married at the time of her entry into the United States as an unmarried person, she has never
12 obtained lawful status, and she is not eligible for United States citizenship.

### C.   THE RELATION BACK DOCTRINE DOES NOT APPLY

14 Petitioner argues that the relation back doctrine should apply here because her marriage was
15 void from the beginning. Petitioner's Reply, p. 8. However, under her theory, the Philippine Court
16 need not have wasted its time issuing an annulment, nor would the relation back doctrine be
17 relevant. Petitioner was legally married at the time of her entry into the United States; however, the
18 relation back theory does not operate here to cure that defect in her entry.

19 The Ninth Circuit's decision in Hendrix v. INS, 583 F.2d 1102 (9th Cir. 1978), is directly
20 on point. There, a native and citizen of the Philippines entered the United States as the unmarried
21 daughter of a United States citizen. 583 F.2d at 1103. She was found deportable, and while her
22 appeal was pending, she obtained an annulment from the Superior Court of California, which found
23 that her consent to marriage was obtained by force. Id. She then argued that the Government must
24 give effect to the annulment. Id. The Ninth Circuit rejected her argument:

> Unless unusual circumstances dictate that in the interest of justice retroactive effect should be given [to] an annulment, . . . it is the marital status at the time of entry that should serve as the basis for one alien's preferment over others under the quota system. At the time petitioner entered the United States she was not an unmarried person.

28 Id. (citation omitted).

1 | The same is true here. At the time of Petitioner's entry into the United States, she was not
2 | an unmarried person. Exh. 12, p. DHS 3. Moreover, if a forced marriage does not constitute
3 | unusual circumstances justifying the retroactive effect of an annulment, surely Petitioner has failed
4 | to establish the existence of unusual circumstances. Giving retroactive effect to Petitioner's
5 | annulment would only facilitate the manipulation of immigration laws because, if Petitioner's
6 | argument is accepted, "it will rest with the married alien to decide unilaterally whether his or her
7 | marriage was valid or invalid according to the goal he or she hopes to achieve." Hendrix, 583 F.2d
8 | at 1104.

### III.   CONCLUSION

For the foregoing reasons, Respondents respectfully request the Court to deny Petitioner's Motion for Summary Judgment, and grant Respondents' Motion for Summary Judgment as a matter of law.

Dated: December 3, 2007                           Respectfully submitted,

                                                  SCOTT N. SCHOOLS
                                                  United States Attorney


                                                        /s/
                                                  MELANIE L. PROCTOR
                                                  Assistant U.S. Attorney